## WHARTON v. UNITED STATES.

(Circuit Court of Appeals, First Circuit.  March 27, 1907.)

### No. 661.

EMINENT DOMAIN—CONDEMNATION OF PROPERTY—RIGHT TO COMPENSATION.
  Lots on a tract of land were conveyed by deeds containing a condition prohibiting their use for certain purposes, such as for the erection and maintenance of any slaughterhouse, smith shop, steam engine or distillery, brewery or saloon, etc., and providing that such condition might be enforced by action by the owner of any other lot on the tract. Certain of such lots were condemned by the United States as a site for a seacoast fortification. *Held*, that these particular conditions did not create a true easement as known to the common law in favor of other lot owners, nor were they intended to apply to public works, but merely to restrict what might be done by persons of business corporations in their own interest, and that, under the circumstances the owners of lots not taken had no interest for which they were entitled to compensation.

In error to the Circuit Court of the United States for the District of Rhode Island.

For opinions of Circuit Court in same case, see 112 Fed. 622.

William P. Sheffield, Jr., and William R. Harvey (Max Levy, on the brief), for plaintiff in error.

Charles A. Wilson, U. S. Atty., and Amasa M. Eaton, for the United States.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

PUTNAM, Circuit Judge. This is a proceeding by the United States for the condemnation of certain lands at Conanicut Island, in the state of Rhode Island. The petition of the United States declares that the purpose was for "the location, construction and prosecution of works for fortification and coast defense." The plaintiff in error intervened, claiming damages in behalf of two distinct matters. The first related to a certain right of way, with regard to which we are not concerned. The judgment sustained his petition so far as that was concerned; but, as to all other claims, it denied him any relief. Thereupon he took out this writ of error.

We need add little, if anything, to the statement of the facts with reference to the issue before us as given in the opinion of the learned judge of the Circuit Court, as follows:

No land of these claimants is actually taken by the decree of condemnation. Nor do their lands adjoin the lands taken by the United States. The claimants are owners of lots of that large tract at the southern end of Conanicut Island, at the entrance of Narragansett Bay, known and platted as "Ocean Highlands." Many lots on this plat have been sold by the Ocean Highland Company subject to restrictions or conditions, the design whereof is to make every portion of Ocean Highlands subject thereto for the benefit of every other portion. Certain lots subject to these restrictions and belonging to other persons have been condemned by the United States for "the location, construction and prosecution of works for fortifications and coast defense," otherwise described as "military uses."

The claimants first assert that the taking of· these lands has destroyed the rights to restrict their use, and that these rights of restriction are appurtenant to the estate of the claimants as "negative easements." The claimants next contend that the destruction of these "negative easements" is a taking of their property by the United States, and that they are entitled to compensation therefor. For the United States it is contended that these rights are not taken, and that the claimants are not entitled to compensation.

The restrictive provision contained in the deeds of part of the land actually taken is as follows:

"But this deed is on condition that no slaughter house, smith shop, steam engine, furnace, forge, bone-boiling establishment, iron or brass foundry, no manufactory of chemicals of any description, of gas, soap, fish guano, fish oil, kerosene or other oil, no brewery, distillery, bar, ale house, drinking saloon, or other place for the manufacture, compounding or selling of any kind of intoxicating liquors in any manner or form, shall ever be erected, located, used, or suffered, in or upon any part of said granted land; and that no other noxious, dangerous or offensive trade or business whatever shall ever be done, carried on or permitted in or upon said land or any part thereof; with the understanding, however, that this shall not exclude from said land any invention, apparatus or machine, appurtenant to a dwelling house, for lighting or warming the same or supplying the same with water; and said conditions may be at any time enforced, by action, injunction or otherwise, by said grantor, its successors and assigns, against said grantee and his heirs and assigns forever, and also by the owner or owners, occupant or occupants, for the time being, of any portion of said Highlands, on the said plat thereof, against any owner or owners, occupant or occupants for the time being of said granted lands, or of any part thereof, forever; the design being to have the conditions hereof in every deed given by said grantor in the premises and make every portion of said Ocean Highlands subject to said condition for the benefit of every other portion thereof forever."

As stated in the opinion from which this quotation is made, no land owned by the plaintiff in error was taken by the condemnation. If any had been so taken, then the interests appertaining to that land, either at law or in equity, in any manner, might properly have been considered in determining its value; and the same would have been true if the plaintiff in error had had any easement as known to the law in or over the lands which have in fact been taken. Under the present circumstances, the only possible interests for which the plaintiff in error could recover, if any, are those arising from the conditions contained in the various deeds shown by what has already been stated, coupled with the facts that the deed or deeds under which he holds contain the same conditions, and are part or parts of the same plan.

The learned judge of the Circuit Court pointed out various reasons why the plaintiff in error had no right or interest which the law requires to be taken care of in this proceeding. It appears from the four corners of all that is contained in the deeds, as indicated by the enumerations therein stated, that the conditions are not to be construed as having reference to ordinary public works, or the incidents thereof. They relate to what might be done in individual interests by persons or business corporations. The purpose of the United States in acquiring the property does not appear to be in any substantial particular inconsistent with the conditions of the deeds or destructive thereof.

We pass by the question raised by the learned judge whether a provision directly aimed against the taking of the lands in question for public uses would not be contrary to public policy, and we observe only that the general outlook of the conditions is in the direction of that taken by him; and, especially, we are impressed by the fact that, after the long enumeration of various structures, the conditions close:

"And that no other noxious, dangerous or offensive trade or business whatever shall ever be done, carried on, or permitted in or upon said land or any part thereof."

The words "trade or business" give a color to all that precedes them; and this color is intensified by the words "no other" in this connection, signifying that all that precedes is of the same class as what follows. It would be a long stretch of the ordinary rules of construction to hold that these conditions would apply to a steam engine which proved to be a necessary incident of a public park, a public arboretum, a public bathing establishment, or any other great public pleasure resort, as to which it could be only a very minor incident. The position of the learned judge of the Circuit Court on this particular topic strikes us favorably, and, we regard it as sufficient to meet the case of the plaintiff in error.

Whatever interest the plaintiff in error has with regard to the lands taken by the United States does not constitute a true easement as known to the common law. Had the deeds contained covenants, they would have been recognized at the common law so far as suits on the covenants between the parties to them were concerned. They contain only conditions. Nevertheless, in equity such conditions are treated to a certain extent as covenants running with the land, and enforceable by decrees for specific performance between subsequent holders who purchased with notice. Such rights are often incorrectly spoken of as negative easements; but what are really negative easements is pointed out in Gale on Easements (7th Ed. 1899), 19 and sequence, a work of the highest authority, where easements known to the common law are catalogued and classified. The better authorities speak of such rights as analogous to negative easements. If they were in fact easements, they would constitute true hereditaments, and the plaintiff in error would be entitled to the allowance of damages, even if nominal. They are subject to the general rules by virtue of which equity refuses to require specific performance of obligations which are unreasonable, or which become so under a change of circumstances, or which involve only nominal values. We need not, however, consider these difficulties in the way of the plaintiff in error, or other possible difficulties, because what we have already said fully disposes of the litigation.

The judgment of the Circuit Court is affirmed.