## MOSES et al. v. HAZEN et al., Com'rs.
### No. 5624.

Court of Appeals of the District of Columbia.
March 5, 1934.

James C. Wilkes and Henry A. Schweinhaut, both of Washington, D. C., for appellants.

William W. Bride and Vernon E. West, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal in a condemnation proceeding instituted in the Supreme Court of the District of Columbia by the commissioners of the District for the acquisition of certain land for school purposes.

The transcript of record discloses the following situation:

The petition of the commissioners was filed on May 26, 1931. On that day the court directed the issuance of a citation to all parties interested in the land sought to be condemned, requiring them to appear on June 16, answer the petition, and show cause why its prayers should not be granted and the land condemned as a site for school purposes. A copy of this citation was served on each of these appellants, and on June 16 the court directed that a jury be impaneled to assess the damages each owner of land might sustain by the condemnation, to assess benefits resulting therefrom, and allowing the appel- lants one week to file such answer or other pleading as they might deem advisable.

On June 23d the appellants filed an answer to the petition in which they claim an interest in the lot sought to be condemned by the District, but the claim is based on their ownership of certain other lots which they acquired by deed from the Chevy Chase Land Company, original owner of all property in question.

This company had laid out and platted an exclusively residential subdivision, and in the sale of lots therein had conveyed them by deeds containing covenants running with the land that "all buildings erected or to be erected upon said land shall be built and used for residence purposes exclusively" and "that said land or any buildings which may be erected thereon shall not be used or permitted to be used for any trade, business, manufacturing, or mercantile purposes."

The appellants contend that these covenants gave them a right of property in the lot to be condemned (813) for which they must be compensated upon its taking; that this right is in the nature of an easement appurtenant to each of their lots, as the dominant tenement, in the condemned lot as the servient tenement; and that the taking of this land for a school site takes their so-called "easement," for which they are entitled to compensation measured by the depreciation in the market value of the dominant tenement resulting from the taking of the lot upon which they hold the servient tenement.

The District moved to strike their answer, and the trial court in a well-considered opinion, which under our rules is a part of the record here, granted the motion, and this appeal is brought to test the correctness of this action.

The trial court rejected the answer on the ground that the covenants properly construed have no reference to public uses for which the land may be required by the government. As to this the court said:

"Examination of the language of the covenants gives rise to the question, whether the covenants in the deeds of conveyance were intended merely to restrict the use to be made of the lands by private parties or whether they were also intended as a restriction against any public use of the land by the government. The covenants must be read together. The first appears to state the contemplated use to be made of buildings upon the land—they 'shall be built and used for residence purposes exclusively'; the sec-

ond enumerates the uses that are apparently intended to be excluded from the subdivision, viz., 'any trade, business, manufacturing or mercantile purpose.' The second covenant, it is thought, clearly gives color to the preceding covenant. Certainly it would seem to stretch violently the use of the language to hold it contemplates that parks, playgrounds, additional roads, and schools are to be excluded from the restricted area. Considering the uses and needs of residential districts, is it reasonable to construe the language used as showing the intention on the part of the owners to exclude all such public uses of land from their neighborhood? And if such exclusions were intended, is it reasonable to suppose that the language of the second covenant would have been confined merely to trade, business, manufacturing or mercantile uses? The more reasonable view would seem to be that while the Land Company and those holding under it intended to exclude private persons from carrying on objectionable business in the restricted area, and are entitled to any value that might accrue to their land as a result of the expectation and belief that private business was excluded, they did not intend, or by the language used attempt, to exclude the government from using the land for necessary public uses nor contemplate an added value to result from the expectation that public use was not to be made of such land. (Wharton v. U. S. [C. C. A.] 153 F. 876.)"

■■ We are in complete accord with the quoted portions of the opinion of the trial judge, and adopt it as our own. Appellants do not pretend to own any of the land taken, and in the circumstances their only possible interests are those arising from the conditions contained in their deeds.

These conditions are covenants that buildings to be erected on the lots within the subdivision shall be built for residence purposes only, and that neither the land nor the buildings thereon shall be used for any trade, business, manufacturing, or mercantile purpose.

It is the rule in such cases that covenants limiting the use of property must be construed strictly and not extended by implication.

The use of the words, therefore, "trade, business, manufacturing, and mercantile purposes," will be understood as confined in their scope to things of the same general character, to things of a business nature, structures which it might be anticipated would be erected by private persons for private commercial uses, and to negative any idea that it was intended to include public works within the restriction.

Consequently parks, playgrounds, and schools are not within the limitation.

The subdivision in question was residential in character and suburban in location, and it is without weight to argue that the future erection of schools in such a neighborhood was not in contemplation of the parties, both vendor and vendee.

We are therefore of opinion that there is nothing in the covenants which was intended to restrict, or which can operate to restrict, the public use of the land in question for the purpose with which we are here concerned.

■ There is also a further ground on which the judgment of the trial court should be sustained, which is that, as against the sovereign in discharge of a governmental function, rights such as are here claimed are not enforceable to restrict or burden the exercise of eminent domain; for the claims of these appellants are not for damage to what are sometimes called true easements, as right of passage or rights to light and air, which are land and subject to condemnation as other interests in land, but the restrictions on which appellants rely are not truly property rights, but contractual rights, which the government in the exercise of its sovereign power may take without payment of compensation.

This distinction was well drawn by Judge Brown, in U. S. v. Certain Lands in Town of Jamestown (C. C.) 112 F. 622, 629, where, referring to conditions like those in this case, he said: "Each landowner holds his estate subject to the public necessity for the exercise of the right of eminent domain for public purposes. He cannot evade this by any agreement with his neighbor, nor can his neighbor acquire a right from a private individual which imposes a new burden upon the public in the exercise of the right of eminent domain."

In this case we are of opinion that the restrictive covenants on which appellants' case is built are no more than negative easements, or rights analogous to negative easements, and while these contractual rights are binding as between the parties and ordinarily enforceable by specific performance between the parties, or others who purchase with notice, they are not binding as against the District of Columbia in the taking of the property in question for a purely governmental use.

Private rights are always subservient to the public welfare.

Appellants also raise certain jurisdictional questions. But, since the record as to these matters is not before us, we obviously cannot deal with them here.

For these reasons, the judgment appealed from is affirmed.

Affirmed.