[Civ. No. 26737. Second Dist., Div. Three. April 10, 1964.]

HAROLD J. MOCK et al., Plaintiffs and Respondents, v. HAROLD SHULMAN et al., Defendants and Appellants.

Buchalter, Nemer, Fields & Savitch and Benjamin E. King for Defendants and Appellants.

Moore & Moore and Robert H. Moore for Plaintiffs and Respondents.

SHINN, P. J.—Plaintiffs brought this action for damages and to restrain defendants from maintaining a thick growth of a line of 16 Forbes Cypress trees which were blocking their view. From a judgment awarding damages and granting an injunction, defendants appeal.

Plaintiffs Harold and Ruth Mock and defendants Harold and Beverly King Shulman are adjacent property owners of hillside lots. Mocks' property is immediately to the north and above the Shulman property. Mock purchased his property in 1951, at which time the Shulman property was vacant, and Mock had a view which he described as a panorama of West Los Angeles, Santa Monica, the beach cities, Palos Verdes, Catalina, and even around to Long Beach. The Shulman property was designed by architect Lloyd Wright, whose concept for development of the property was described by Shulman as involving "the setting of a residence in a park-like area with a maximum of privacy and a maximum orientation toward the southwest." In accordance with this plan 16 Cypress trees were planted at intervals of about 6 to 8 feet on the northerly side of the property. Plaintiffs' lot is 15 to 20 feet higher than defendants' property, and it was not until 1957 and 1958 that the Cypress trees began to be a problem, when they started to interfere with the light, air and view from the Mock property. The trees completely or partially blocked the Mocks' view from their home and yard. When Mock was unable to work out any solution for the problem this suit was instituted.

The gravamen of the action was that the trees were maintained in violation of tract restrictions and a city ordinance. On the first cause of action the court found that there were existing equitable servitudes on the properties of both parties, and that one of the restricitons was that "No fence, wall or hedge over six feet in height shall be erected or grown or permitted to exist on any lot or lots in said tract within fifteen feet of any boundary line of any lot; provided, however, that the restrictions set forth in this paragraph 4 may be waived or modified as to any lot or lots in said tract by a written instrument duly executed by the Architectural Su-

pervising Committee.'' The court further found that there had been no waiver or modification of the above restriction, and ''that the defendants, within the last two years, have not only permitted said 16 cypress trees to grow in height, but they have violated the covenant of said deed restrictions ... in that defendants, and each of them, have grown, maintained and permitted to exist on the northerly side of their said lot in said tract, during this period, as a result of the growth of said 16 trees and their intertwining and interlacing, a hedge over six feet in height within 15 feet of plaintiffs' and defendants' said common boundary line.''

The court found that the trees interfered with the Mocks' light and air, and their comfort, use and enjoyment of their property and constituted a continuing nuisance.

The Shulmans were enjoined and restrained from maintaining or allowing to exist at any time prior to January 1975, when the restrictions will expire, any hedge over 6 feet in height within 15 feet of their northerly boundary. We have concluded that defendants' attack upon this feature of the judgment must fail.

Defendants contend there was no proof that their property was restricted, since only their own deed was placed in evidence. Their position is untenable. That was not an issue in the case. The complaint set out the pertinent provisions of the restrictions and alleged that both properties were subject to the same. The answer specifically admitted the properties were restricted as alleged and there was a stipulation to the same effect in the pretrial proceedings.

The court found that the restrictions were imposed upon all the lots in the tract in which the respective lots of the parties were located; they were for the mutual benefit of the entire tract and the owners of the several lots therein, ran with the land and were binding upon and enforceable by each lot owner as against all other lot owners. The restrictions were in the form that has often been held adequate to create mutual equitable servitudes, breach of which will be enjoined. (*Robertson* v. *Nichols*, 92 Cal.App.2d 201, 206 [206 P.2d 898]; *Gamble* v. *Fierman*, 82 Cal.App. 180 [255 P. 269]; 14 Cal.Jur.2d, Covenants, etc., § 102, 116-117.)

Defendants next contend the court was in error in finding that the trees constitute a hedge. Witnesses having familiarity with planting of shrubs and trees expressed divergent views as to what growth would and what would not constitute a hedge. This evidence, as would be expected, was

inconclusive. The trial judge visited the premises and looked at a line of trees some 18 to 20 feet in height with intertwining branches and foliage of a density which constituted a barrier to sight and shut off the view from portions of the Mock residence. He found this obstruction to be a hedge within the meaning of the restrictions, as it undoubtedly was. The purpose of the restriction was to prevent interference with the full and free use of adjoining property by means of tall growths of shrubs or trees, and "hedge" must be given a meaning consistent with that purpose. The judgment contained a definition of the word "hedge," as any tree or shrub, any portion of which came within 3 feet of any other tree or shrub or any portion thereof. The evidence was sufficient to warrant the finding that a hedge existed. The definition of "hedge" was carried into the judgment to describe the growth of trees or shrubs that would be in violation of the injunction.

Defendants contend that the restriction with respect to hedges was waived. It was alleged in the answer that the restrictions provide that all planting of trees, bushes and shrubbery should be designated upon plans to be submitted to a committee established under the restrictions, for its approval; defendants' plans and specifications for the planting of the trees were submitted to and approved by the committee; the trees were planted in accordance with the plans. Defendants contended that approval of the plan of planting constituted a waiver of the provision which limited the height of hedges within 15 feet of the exterior boundaries of a lot to 6 feet. The court found there had been no waiver. The trees when planted were very small and there was evidence that it would have been feasible to keep them trimmed to a legal height. The finding against the claim of waiver had support in the evidence.

The feature of the judgment which enjoins defendants from maintaining the trees as a hedge over 6 feet in height at any time prior to January 1975 must be affirmed.

The judgment also enjoins defendants from maintaining or permitting to exist on the northerly side of their property near the common boundary line any hedge or hedge effect more than 6 feet in height as prohibited by the ordinance. (Municipal Code, § 12.22, subsec. C, subd. 20, pars. (f) and (i).) Paragraph (f) provides in part that "A fence, lattice work screen, wall, hedge, or thick growth of shrubs or trees, not more than six feet in height above the natural

ground level adjacent thereto, may be located and maintained . . . in the required side or rear yard, . . . in any zone. . . ."

Although the injunction, based upon the restrictions, which will be effective until 1975, would seem to be adequate to settle the present controversy, the restraint based upon the ordinance is permanent and presents an additional question.

The contentions of the parties may be summarized as follows: Defendants contend that under the ordinance the width of their required side yards is 5 feet; the trees are not within this 5-foot area and, therefore, are not in violation of the ordinance. Plaintiffs contend that even if the trees are not within the 5-foot area their maintenance as a hedge is nevertheless forbidden by the ordinance.

Both parties are in Zone R-1 and under Municipal Code section 12.08, subsection C, subdivision 2, the required side yard is 5 feet. ■ Defendants requested a special finding to the effect that the trees are not within 5 feet of the border line, but the court made no finding upon that factual question. Therefore, it may not be presumed that the court found the trees to be within the 5-foot area. (Code Civ. Proc., § 634.) The only evidence upon this point was the testimony of Mr. Mock and one defense witness that the trees were 6 or 8 feet from the boundary. Plaintiffs concede this to be the fact.

■ Plaintiffs contend that paragraph (i) of section 12.22, subsection C, subdivision 20, is a further restriction on what can be grown on an owner's property. Paragraph (i) provides that "Landscape features, such as trees, shrubs, flowers or plants, shall be permitted in any required front, side or rear yard, passageway or other open space, provided they do not produce a hedge effect contrary to the provisions of Paragraphs (f) and (i) above." The question involves the interpretation of the phrase "other open space." This argument is based on the erroneous reasoning that while the word "required" modifies front, side, rear yard and passageway, it does not modify "other open space," and, therefore, trees which produce a hedge effect anywhere on the property would be prohibited. This strained interpretation is clearly incorrect and would violate the well-established rule that legislative enactments are to be given a reasonable interpretation, and that various provisions are to be construed as a whole and given a construction which will harmonize, rath-

er than one that would cause them to conflict. (*Klassen* v. *Burton*, 110 Cal.App.2d 539 [243 P.2d 28] ; *People* v. *Amdur*, 123 Cal.App.2d Supp. 951 [267 P.2d 445].)

A side yard is defined in Municipal Code section 12.03: ''A yard more than six (6) inches in width between a main building and the side lot line, extending from the front yard or front lot line where no front yard is required, to the rear yard. The width of the required side yard shall be measured horizontally from the nearest point of the side lot line toward the nearest part of the main building.''

In the instant case the property of both parties is zoned R-1, and the required side yard under Municipal Code section 12.08, subsection C, subdivision 2, would be 5 feet. Therefore, the required side yard of the defendants would be a strip of ground 5 feet wide, running from the front to the rear of the lot, parallel to the side boundary. Anything inside this strip would be subject to the provisions of section 12.22, and a hedge or thick growth of trees could not be over 6 feet in any height. But anything outside of the required areas could be any height. The code provisions cannot be construed as forbidding the maintenance of a hedge anywhere upon the lot. The provisions of the judgment based upon a supposed violation of the ordinance must be reversed.

The court also awarded plaintiffs $500 for past damages due to interference with the full use and enjoyment of their property. There was ample evidence to justify this award and it should be affirmed.

Defendants' contention that the common law doctrine of the right to light and air is not recognized in California is inapplicable to the present case. Civil Code section 801, subd. 8, specifically provides that the right to receive light and air may be a servitude attached to the land. This is a property right that can be created by instrument. (*Kennedy* v. *Burnap*, 120 Cal. 488 [52 P. 843, 40 L.R.A. 476] ; *Knoch* v. *Haizlip*, 163 Cal. 146 [124 P. 998].) In the instant case the plaintiffs' right to light and air was created by the original deeds to lots in the subdivision. Mutual property rights were created and could be protected by equitable proceedings. (*Hartsif* v. *Wann*, 139 Cal.App.2d 119, 120 [293 P.2d 65] ; Civ. Code § 809.)

The recovery of $500 damages did not, as defendants contend, constitute a double recovery, as condemned in *Spaulding* v. *Cameron*, 38 Cal.2d 265 [239 P.2d 625]. The damages were for the past annoyance, inconvenience, dis-

comfort and interference with the plaintiffs' rightful use and enjoyment of their property.

 The award was a proper element of recovery in an action for the interference with a property right. (*Herzog* v. *Grosso,* 41 Cal.2d 219, 225 [259 P.2d 429]; *Karnoff* v. *Kingsburg Cotton Oil Co.,* 45 Cal.2d 265, 271-275 [288 P.2d 507]; *Ingram* v. *City of Gridley,* 100 Cal.App.2d 815, 821-823 [224 P.2d 798].)

 There is another feature of the judgment to be considered. In addition to awarding damages for the invasion of plaintiffs' rights to the time of trial, the judgment purports to assess the damages plaintiffs will suffer in the future if defendants fail to obey the injunction. It reads in part: ". . . the continuance of the present hedge or hedge effect conditions by defendants, or either of them, on their said land will be in violation of said deed restrictions if existing at any time prior to January 1, 1975 and of said city ordinance provisions, be in violation of mandatory injunctive provisions herein, and shall be found to cause the plaintiffs immediate additional damages, to be assessed at the rate of $500.00 for each month that any such hedge or hedge effect condition exists."

This idea was first suggested in the court's oral statement of its conclusions as follows: "It is further the finding of the Court that the maintenance of the present conditions by defendants without complying with the mandatory injunctive provisions herein shall be found to cause the plaintiffs additional damages, to be assessed at the rate of $500 for each month that any such condition exists." The findings are in substantially the same language and the conclusions of law state that damage of $500 will be sustained "for each month that defendants, or either of them, fail to comply with the court's orders and judgment herein."

This provision of the judgment is erroneous. It is not within the issues that were pleaded or tried. The relevant issues as to damages were stated in the pretrial order as follows: "5. The amount of past damage if any caused to plaintiffs by defendants to be awarded plaintiffs in addition to granting of injunction. 6. If injunctive relief is denied, what damage, if any, to plaintiffs for past, present and future invasion of rights, if any." The only evidence with respect to damage consisted of the testimony of Mr. Mock which described the annoyance he and his wife had suffered, and opinion evidence of several witnesses that under the existing conditions the value of plaintiffs' property was materially depreciated. The

first element of damage was fixed at $500. The prayer for injunctive relief, or for damages in the alternative, was satisfied by the granting of an injunction.

The attempted determination of the question of damages after the judgment becomes final envisions some future proceeding in which plaintiffs will claim additional damage. This provision of the judgment does not relate to the time that might elapse between the date of the judgment and the time it becomes final. Even if it purported to relate to that period the finding of future damage for interference with plaintiffs' free and full enjoyment of their property would be outside the issues and without support in the evidence. Upon sufficient evidence the court found that in the past, between 1958 and 1962, plaintiffs had been damaged in the amount of $500. To estimate the damage they may suffer in the future at $500 per month would be baseless speculation and utterly inconsistent with the finding as to past damage. If, in some future proceeding, the claim of additional damage is asserted by plaintiffs that issue will be determined upon proper pleadings and the evidence the parties will produce. The provision of the judgment relating to future damages should be stricken.

The judgment restrains defendants and all persons acting in concert with them "From locating or growing or permitting to exist or maintaining at any time prior to Janyary 1, 1975 on the northerly side of defendants' property, hereinafter described, within fifteen feet of the common boundary line between plaintiffs' and defendants' properties, hereinafter described, any hedge over six feet in height, as prohibited by said deed restrictions; and, the term 'hedge' the Court now defines for these purposes as follows: Any trees, shrubs or other natural growth situated on the northerly side of defendants' said land within 15 feet of the common boundary line between plaintiffs' and defendants' properties in such manner that any limb, branch, leaf, or other portion of the said trees, shrubs or other natural growth comes within a point of three feet or less of any other trees, shrubs, or other natural growth, or portion thereof." And if further commands defendants to remove all hedges which they are enjoined and restrained from maintaining as particularly set forth. The parties will be governed by the foregoing description as to what growth of trees, shrubs or other natural growth upon defendants' property would be violative of the injunction.

As previously stated, the finding that the hedge constitutes a violation of the provisions of the Municipal Code is contrary to the undisputed evidence that the trees are from 6 to 8 feet from defendants' northerly line. The determination, based upon that finding, that the existing condition is one that is prohibited by the code is in error.

The judgment is modified by striking therefrom (1) all provisions which are based upon the Los Angeles Municipal Code; (2) the words "... and shall be found to cause the plaintiffs immediate additional damages, to be assessed at the rate of $500.00 for each month that any such hedge or hedge effect condition exists."

The judgment is affirmed as modified; respondents to recover costs of appeal.

Ford, J., and Files, J., concurred.