THOMAS K. MEREDITH AND ROSE N. MEREDITH, APPELLANTS, v. WASHOE COUNTY SCHOOL DISTRICT, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, ACTING BY AND THROUGH ITS BOARD OF TRUSTEES, RESPONDENT.

No. 5325

January 3, 1968                                    435 P.2d 750

*Richards & Demetras,* of Reno, for Appellants.

*William J. Raggio,* District Attorney, and *Robert Gaynor Berry,* Chief Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

This case presents a claim for damages by an owner of property within a residential subdivision who contends that the extinguishment of a restrictive covenant running to the benefit of his property adjoining the condemned property is a property right which is being taken and for which he is entitled to damages.

The Washoe County School District instituted condemnation proceedings for the purpose of obtaining title to certain land on which to construct an elementary school building and grounds. The property subject to condemnation lay within a residential subdivision. The lot owners in the subdivision were granted in their deeds from the common grantors a restrictive covenant limiting the use of the property to residential purposes.

The school district in its complaint named as defendants, the owners of the property subject to condemnation and the owners of adjacent land benefitted by the restrictive covenants. Judgment was entered against all defendants except the appellants, Thomas and Rose Meredith. The appellants filed answer and counterclaimed for damages predicated on the extinguishment of the restrictive covenants of which they were beneficiaries. All other landowners in the subdivision who were not made parties to the condemnation proceedings released their rights to the school district.

By stipulation, the questions presented to the trial court were:

1.  Is the extinguishment of the restrictive covenants by a public body under the power of eminent domain the taking of private property for public use for which compensation must be paid?

2.  If so, what is the measure of damages suffered by the defendants for the extinguishment of the restrictive covenants?

The trial court answered the first question in the negative and refused to allow proof of damages. On appeal, the same questions are in issue. We reverse the ruling of the trial court.

The Fifth Amendment of the U.S. Constitution and Art. 1, Sec. 8, of the Nevada Constitution provide that private property shall not be taken for public use without just compensation. The basic question, then, is whether an equitable servitude, or easement, such as here, a restrictive covenant, is deemed to be "property" in a constitutional sense, for which just compensation must be paid. To a "majority" of jurisdictions this has been the question and has been answered in the affirmative. To other jurisdictions the "property" concept has not been the basic consideration, rather, a public policy analysis has been employed to hold in the negative irrespective of any definition of "property." The cases are collected in 4 A.L.R.3rd 1121, et seq., and in 2 Nichols, Eminent Domain, Sec. 5.73, p. 125, et seq.

This case is unique and one of first impression in our state. We note a clear division of authority among the jurisdictions that have considered this problem. We believe the better view is one that holds a restrictive covenant to be an interest in property, or a property right accorded legal recognition and protection in all cases, and therefore, must be justly compensated for its taking or extinguishment no matter if by a private party or sovereign.

The condemnation here is clearly for a public purpose, the construction of a school. NRS 37.010(3). NRS 37.020, classifying estates and rights in land subject to be taken for public use, provides for the condemnation of easements when taken for any other use. The statute obviously recognizes an easement either as an estate or right in land. Logic compels the conclusion that such is entitled to be compensated for when taken because a restrictive covenant is an easement or a servitude in the nature of an easement. Chapman v. Sheridan-Wyoming Coal Company, 338 U.S. 621 (1950). It is therefore properly included within the purview of NRS 37.020 (2).

NRS 37.080 recognizes broadly based interests and damages for the taking thereof by providing that all persons, having or claiming an interest in the property or in the damages, may appear, plead and defend each in respect to his own property or interest.

NRS 37.110(3) specifically provides that a court, jury, commission or master must hear legal testimony offered by any of the parties to the proceedings, and thereupon must ascertain and assess if the property, though no part thereof is actually taken, will be damaged the amount of such damages. This statute further provides, as far as practicable, compensation must be assessed for each source of damages separately. The statute therefore contemplates, if not mandates, consideration of the appellants' interest.

It appears the trial court's decision rested largely on the aspects of "impracticability" in handling such claims. But we find it difficult to subscribe to such public policy arguments in terms of procedural or substantive problems espoused by the jurisdictions which deny compensation for the extinguishment of a restrictive covenant.

The public policy argument is founded on the premise that eminent domain rests upon public necessity, and thus, to uphold the validity of restrictive covenants would inhibit the actions of the sovereign charged with the obligation to provide for the public welfare. See, e.g., Doan v. Cleveland Short Line Ry. Co., 112 N.E. 505 (Ohio 1915); City of Houston v. Wynne, 279 S.W. 916 (Tex.App. 1925). We cannot see how compensation, required by constitutional commands, can be said to interfere with any governmental taking. See Town of Stamford v. Vuono, 143 A. 245 (Conn. 1938). Further, this is a contention of practicality and is perhaps most often urged by courts in denying compensation for the extinguishment of a restrictive covenant. It is a two-fold argument that unwarranted procedural and substantive burdens would be imposed on the public authority if the extinguishment required compensation. The substantive aspect of this view is that the total compensation for damages would be so great as to make it prohibitive to acquire land in a subdivision. This rests on the supposition that damages can be proven by each lot owner and that such will be substantial in amount. It does not take into account the inverse relation of distance from the project site and the amount of damage.

The procedural view essentially supposes that the subdivision will be a large tract with many lots and each lot owner would necessarily have to be served and that a trial on the issue of damages for each lot owner would serve to practically prohibit the public authority from condemning any land so situated. See 1945 Wisc.L.Rev. 5; 48 Va.L.Rev. 437 (1962); 53 Mich.L.Rev. 451 (1955). Further, it is to be noted in the present situation the respondent faces challenge

by only one of over 45 property owners. All others did not claim damage.

We do not agree that because a number of persons may be affected by the proceedings it is best to hold the appellants have no right that the law should protect against the sovereign and deny them the right to offer proof of damage. Procedural considerations should not determine the substantive question of whether there is a compensable property interest.

Furthermore, our existing civil practice procedures and statutes are sufficient to bring before the court all persons claiming a compensable interest. Since all land owners within a subdivision can be readily ascertained from public records, they may be made a party either by personal service or publication. See NRS 37.070(3); NRCP 4(d) and (e). The burden then falls on the claimants to appear and establish their loss.

It is to be remembered that there are two basic devices for urban planning and development; community zoning and restrictive covenants among private individuals. The beneficial results of private land-use controls are readily apparent throughout the country and are not merely confined to residential subdivisions. Use of restrictions are encouraged by most planning agencies. Indeed, restrictive covenants are held to be superior to zoning laws which rest on police power. Abrams v. Shuger, 57 N.W.2d 445 (Mich. 1953); Olberding v. Smith, 34 N.E.2d 296 (Ohio App. 1934); Vorenberg v. Bunnell, 153 N.E. 884 (Mass. 1926); Marshall v. Salt Lake City, 141 P.2d 704 (Utah 1943).

2. The measure of compensation is the value of the interest that is extinguished. But since the value of a restrictive covenant cannot be in the abstract, we must look to the market value of the dominant tenement before and after the taking. In substance, the value of the loss offset by the value of the benefits is the amount of compensation to be awarded. NRS 37.110.

Reversed and remanded.

THOMPSON, C. J., COLLINS, BATJER, and MOWBRAY, JJ., concur.