[L.A. No. 30095. In Bank. Mar. 28, 1973.]

SOUTHERN CALIFORNIA EDISON COMPANY,
Plaintiff and Respondent, v.
RICHARD D. BOURGERIE et al., Defendants and Appellants.

COUNSEL

Jack Otero, Roger M. Sullivan and Gideon Kanner for Defendants and Appellants.

Rollin E. Woodbury, Robert J. Cahall, Harry W. Sturges, Jr., and Tom P. Gilfoy for Plaintiff and Respondent.

OPINION

MOSK, J.—The sole question at issue is whether a building restriction in a deed constitutes "property" for purposes of article I, section 14, of the California Constitution[1] so that compensation must be made to a landowner who has been damaged by the construction of an improvement which violates the restriction on land acquired by eminent domain.

---

[1]Article I, section 14, of the California Constitution provides in part, "Private property shall not be taken or damaged for public use without just compensation having first been made to . . . the owner . . . ."

In 1964, defendants purchased a tract of land in Santa Barbara from the Bank of America; the bank retained a portion of the tract adjoining defendants' property on the west. The deed from the bank to defendants provided that the property transferred could not be used for an electric transmission station, and the land retained by the bank was made subject to the same restriction. Plaintiff, Southern California Edison Company (Edison), a public utility, sought to acquire the bank's land by eminent domain, for the purpose of building an electric substation.[2]

In its complaint against the bank, Edison joined defendants, alleging that they owned or claimed some right, title or interest in the bank's land. Defendants answered, asserting that the bank's land was burdened with a restriction in their favor, and that they would be damaged by the proposed electric substation. Subsequently, the bank and Edison entered into a stipulation for judgment in which the bank agreed to permit Edison to acquire the bank's land for a specified sum. The action proceeded to trial on the issues relating to the propriety of the condemnation, and the trial court rendered judgment in Edison's favor, holding that the property sought to be condemned would be applied to uses authorized by law. It held also that the restriction forbidding the construction of an electric transmission station on the bank's land did not create a compensable property interest in defendants.

In attacking the basic issue defendants fire two salvos. First, they maintain that a building restriction constitutes "property" as that term is used in article I, section 14, of the California Constitution and, therefore, a taking must be compensated whether the plaintiff seeking condemnation is a governmental entity or a private party. Second, they assert even if a restriction is not viewed as compensable property when the condemner is a governmental entity, nevertheless a private, profit-making corporation such as Edison may not violate the restriction without compensating the property owner in whose favor it runs. ■ We need not reach the second of these issues since, as will appear, we conclude that whether the condemner is a public or private entity, a building restriction constitutes "property" within the meaning of article I, section 14, and compensation must be paid whenever damage to a landowner results from a violation of the restriction.

The trial court ruled against defendants in reliance upon *Friesen* v. *City*

---

[2]Section 1001 of the Civil Code provides that any person may acquire private property by eminent domain for any use specified in section 1238 of the Code of Civil Procedure. Section 1238 of the Code of Civil Procedure states that the right of eminent domain may be exercised by any public utility for electric power facilities.

_of Glendale_ (1930) 209 Cal. 524 [288 P. 1080], and _Lombardy_ v. _Peter Kiewit Sons' Co._ (1968) 266 Cal.App.2d 599 [72 Cal.Rptr. 240]. In _Friesen,_ a case we have not reexamined in over four decades, the court held: a building restriction is not a property right but merely a negative easement or an equitable servitude; such an interest is, in essence, a contractual right cognizable in equity as between the contracting parties but not binding upon the sovereign since parties may not by mutual covenants in private contracts create for themselves an estate in land entitling them to compensation by the state; moreover, if plaintiffs' position were sustained, each landowner in the tract to which the restriction applies as well as the encumbrances of the various lots would be necessary parties to a condemnation suit, thereby greatly increasing the cost of condemnation. In _Lombardy_ the Court of Appeal denied compensation on the authority of _Friesen._

A majority of jurisdictions which have considered the matter hold that building restrictions constitute property rights for purposes of eminent domain proceedings and that a condemner must compensate a landowner who is damaged by violation of the restriction. (_Horst_ v. _Housing Auth. of County of Scotts Bluff_ (1969) 184 Neb. 215 [166 N.W.2d 119, 121]; _Meredith_ v. _Washoe County School District_ (1968) 84 Nev. 15 [435 P.2d 750, 752-753]; _United States_ v. _Certain Land in City of Augusta, Maine_ (D.Me. 1963) 220 F.Supp. 696, 700-701; _School District No. 3_ v. _Country Club of Charleston_ (1962) 241 S.C. 215 [127 S.E.2d 625, 627]; _Town of Stamford_ v. _Vuono_ (1928) 108 Conn. 359 [143 A. 245, 249]; _Allen_ v. _City of Detroit_ (1911) 167 Mich. 464 [133 N.W. 317, 320]; see cases collected in 4 A.L.R.3d 1137; 2 Nichols on Eminent Domain (3d ed. 1970) § 5.73[1].) The Restatement of Property also adopts this view. (Rest., Property, § 566.) _Friesen_ and other cases adhering to the minority view have been sharply criticized by law review commentators. (See, e.g., Aigler, _Measure of Compensation for Extinguishment of Easement by Condemnation,_ 1945 Wis.L.Rev. 5; Stoebuck, _Condemnation of Rights the Condemnee Holds in Lands of Another_ (1970) 56 Iowa L.Rev. 293; Spies & McCoid, _Recovery of Consequential Damages in Eminent Domain_ (1962) 48 Va.L.Rev. 437; Comment (1955) 53 Mich.L.Rev. 451.)

We are impressed with the cogent criticism of the conceptual underpinnings of _Friesen._ First, it is unquestioned that building restrictions constitute property rights for some purposes (_Mock_ v. _Shulman_ (1964) 226 Cal.App.2d 263, 269-270 [38 Cal.Rptr. 39]; see 5 Powell on Real Property (1971) § 671, p. 147). Furthermore, it is difficult to justify affording compensation for the appropriation of an easement, which is unquestionably compensable "property" (see 2 Nichols on Eminent Domain

(3d ed. 1970) § 5.72), while denying payment for violation of a restriction. Both easements and building restrictions may be created by agreements between private parties and, therefore, upon condemnation in both situations the financial burden of the condemner is increased solely by virtue of agreements made between private parties.[3] Equally important, the violation of a building restriction could cause far greater damage in monetary value to a property owner than the appropriation of a mere right of way. To establish a substantive distinction by merely labeling one a property interest for which compensation must be made and the other a mere contractual right which may be appropriated by a condemner without any compensation is inequitable and rationally indefensible.

We need not contemplate in depth the somewhat esoteric dialogue on the appropriate characterization of a building restriction. One writer has perceptively declared that the "no-property-interest argument is less the motivation for denial of compensation than it is a rationalization for a result desired for other reasons" (Stoebuck, *op. cit. supra,* 56 Iowa L.Rev. at p. 306). An objective analysis reveals the real basis for the decisions which deny compensation for the violation of building restrictions by a condemner relates to pragmatic considerations of public policy rather than abstract doctrines of property law, and it is upon these issues of policy that jurisdictions choose between the minority and majority views. (Compare *Wharton* v. *United States* (1st Cir. 1907) 153 F. 876, expressing in dictum the minority concept, with the most frequently cited case for the majority position, *Town of Stamford* v. *Vuono, supra,* 143 A. 245.)[4]

---

[3]Professor Aigler, in his article, *Measure of Compensation for Extinguishment of Easement by Condemnation, op. cit. supra,* 1945 Wis.L.Rev. 5, 23-24, footnote 44, offers this analysis: ". . . . But surely it is possible for a landowner by his own act, for instance by improving his land with buildings, trees, etc., to increase the amount of compensation he is entitled to receive on condemnation. The condemning unit cannot expect to get off by paying for the taken land only in its natural state untouched by the hand of man and unaffected by developments in the neighborhood. Likewise he may clearly get increased compensation if he has acquired valuable easements (legal) apurtenant [*sic*] to the land taken, and if the legal easement he has acquired burdens the taken land for the benefit of his land which is not taken, the authorities all agree that he is entitled to compensation. Why, then, should compensation be denied when the increase in value or the interest extinguished was created by covenant instead of by a deed of conveyance and is called an equitable instead of a legal easement? The contract in these situations creates *property rights.*"

[4]The rationale of the Connecticut court in *Stamford* (at pp. 248-249) seems irrefutable: "The plaintiff also contends that these restrictions, in so far as they prohibit the erection of a high school or other municipal building upon the restricted property, are void as against public policy. The argument in support of this contention is that no contractual agreement between the owners of property should be permitted to prevent the use of that property by an agency of the state when its use is required in the exercise of a governmental function, that to require the state to make compensation for the right taken would interfere with this governmental

Denial of compensation has been justified upon the ground that the cost of constructing public projects will be substantially increased if compensation must be provided by a condemner for the violation of a restriction. In addition, it is asserted that a condemner might be required to join a large number of landowners as defendants in cases where the benefit of the restriction runs to numerous lots, and that this could result in inhibiting the condemner's ability to acquire essential property.[5] Finally, it has been suggested that landowners might "pluck valuable causes of action from the thin air" by entering into agreements imposing restrictions whenever condemnation proceedings are on the horizon. (*Arkansas State Highway Commission* v. *McNeill* (1964) 238 Ark. 244 [381 S.W.2d 425, 427, 4 A.L.R. 3d 1121].)

We find these reasons for denying compensation to be unpersuasive. Conceding the possibility that the cost of condemning property might be increased somewhat by awarding compensation for the violation of building restrictions, we cannot conclude that such increases will significantly burden exercise of the power of eminent domain. As a practical matter some takings would result in negligible damage to the owners of the restriction (e.g., public works such as parks or access roads); if the character of the improvement were such that damage to some landowners would result (e.g., schools or fire stations), it is likely that only those immediately adjoining or in close proximity to the improvement would suffer substantial injury, even in highly restricted areas. As to the procedural difficulties, while they are not here involved and we need not decide the issue, it has been posited by some authorities that a condemner need only selectively join in the action landowners whose property is most likely to be damaged by the violation of the building restriction; there are other remedies for

---

function, and therefore should not be permitted. The fallacy of the argument lies in the assumption of its minor premise that the requirement that the state compensate the owner of the dominant tenement for the taking of his interest in the servient tenement actually interferes with the exercise of any governmental function. There is, of course, a clear distinction between the rights of the private owner of land which is subject to a restrictive easement and those of a governmental agency which requires for public purposes the use of the land in violation of the restriction. The private owner may not violate the restriction; if he attempts to do so he may be restrained by injunction. The governmental agency may not be restrained from making such use of the property as the public purpose for which it is acquired may require, but, if that involves the taking of private property it must make compensation for the same. When, therefore, property subject to a restrictive easement is taken for a public use, it has been held that the owner of the property for whose benefit the restriction is imposed is entitled to compensation. . . . Such restrictions are in the nature of an easement constituting an interest in the land upon which they are imposed."

[5]Professor Aigler referred to the "lively imagination" of a Texas court which saw 10,000 possible claimants. (Aigler, *Measure of Compensation for Extinguishment of Easement by Condemnation, op cit. supra,* 1945 Wis.L.Rev. at p. 32.)

excluded owners who anticipate the improvement will result in damage to their property. (See Stoebuck, *op. cit. supra,* 56 Iowa L.Rev. pp. 307-308.) Finally, the speculative possibility that some unduly acquisitive landowners might in bad faith enter into restrictive covenants solely for the purpose of collecting compensation would not justify the denial of compensation to all property owners, including those acting in good faith. If bad faith or sharp practices were established, a court could properly refuse to allow compensation.

Under the minority view, compensation is denied to persons whose property may have been damaged as a result of the violation of a valid deed restriction, thereby placing a disproportionate share of the cost of public improvements upon a few individuals. Neither the constitutional guarantee of just compensation nor public policy permit such a burdensome result. The United States Supreme Court has recently declared, "The constitutional requirement of just compensation derives as much content from the basic equitable principles of fairness . . . as it does from technical concepts of property law." (*United States* v. *Fuller* (1973) 409 U.S. 488, 490 [35 L.Ed.2d 16, 20, 93 S.Ct. 801].) Our conclusion to harmonize California law with the majority rule is in conformity with this salutary principle.

For all the foregoing reasons, *Friesen* v. *City of Glendale, supra,* 209 Cal. 524, is overruled and *Lombardy* v. *Peter Kiewit Sons' Co., supra,* 266 Cal.App.2d 599, is disapproved to the extent that they are inconsistent with the views herein expressed.

The judgment is reversed insofar as it determines that defendants are not entitled to be compensated for the violation of the restriction. In all other respects the judgment is affirmed.

Wright, C. J., Tobriner, J., Sullivan, J., and Kaus, J.,* concurred.

**BURKE, J.**—I dissent. The majority opinion extends the provisions of article I, section 14, of the California Constitution to a degree previously unrecognized in this state, thereby substantially affecting future eminent domain proceedings. This case alters long-standing California law to conform with the rule in the "majority" of American jurisdictions on the issue of compensability of a "taking" of building restrictions in eminent domain proceedings. However, in doing so, the majority discards the conceptual bases supporting the prior California position without submitting persuasive reasons justifying the change.

---

*Assigned by the Chairman of the Judicial Council.

It has been stated "a determination that 'property' has been 'taken' is merely descriptive of the end result, the conclusion reached, rather than of the reasons that impelled the conclusion. The very question to be decided in a case of this character [eminent domain proceedings involving a violation of a building restriction] is whether, *after all relevant factors are weighed,* it can be said that a property right does exist as between the condemner and the person claiming compensation." (Kratovil & Harrison, *Eminent Domain-Policy and Concept* (1954) 42 Cal.L.Rev. 596, 630; italics added.)

Today's majority opinion is founded upon the tenuous proposition that a building restriction is substantially equivalent to an easement. Since an easement is a compensable property interest, and since both easements and building restrictions bear some similar characteristics, the majority concludes that a violation of a building restriction in a condemnation action is a taking of a property interest, and is likewise compensable. Yet an easement is an affirmative right of use, whereas a building restriction is wholly negative in character, amounting to no more than a promise not to use property in a particular manner. Although the majority characterizes the distinction between compensability for easements and noncompensability for building restrictions as "inequitable and rationally indefensible," a number of jurisdictions have found the policies underlying the distinction to be reasonable and persuasive.[1]

The California doctrine denying compensation for a "taking" of building restrictions was first announced in *Friesen* v. *City of Glendale,* 209 Cal. 524 [288 P. 1080], which the majority now overrules. The reasons espoused in support of the holding in *Friesen* appear equally as cogent today as when that case was decided. In *Friesen* the court held a building restriction amounted to no more than a contract right, enforceable in equity as between the parties or their successors with notice, and did not attain the status of a compensable property interest.[2] Other courts have concluded similarly. (*Moses* v. *Hazen,* 69 F.2d 842 [63 App.D.C. 104, 98 A.L.R. 386]; *City of Houston* v. *Wynne* (Tex.Civ.App.) 279 S.W. 916; *Board of Public Instruction* v. *Town of Bay Harbor I.* (Fla.) 81 So.2d 637; *Anderson* v. *Lynch,* 188 Ga. 154 [3 S.E.2d 85, 122 A.L.R. 1456]; *Doan* v. *Cleveland Short Line R. Co.,* 92 Ohio St. 461 [112 N.E. 505].) The majority fail to explain what reasons now compel a contrary rule.

---

[1]By reason of this decision California conforms with the rule followed by the majority of jurisdictions in the United States. However, the number of jurisdictions adhering to the minority view is substantial. (See cases collected in 4 A.L.R.3d 1137; 2 Nichols on Eminent Domain (3d ed. 1970) § 5.73[2].)

[2]See 5 Powell on Real Property (1971) section 671, page 144, where a promise respecting the use of land is recognized as a type of contract between the parties which did not constitute property at common law.

The conceptual premises underlying eminent domain proceedings add further support to the holding in *Friesen*. In *Smith* v. *Clifton Sanitation District*, 134 Colo. 116, 120 [300 P.2d 548], the court remarked "We think it is fundamental that where a company, corporation or agency of the state is vested with the right of eminent domain and has acquired property through eminent domain proceedings and is using the property for public purposes, no claim for damages arises by virtue of such a covenant as in the instant case, in favor of the owners of other property on account of such use by the condemner. Were the rule otherwise the right of eminent domain could be defeated if the condemning authority had to respond in damages. . . ." The above remarks focus on the added expense which a damages award would impose in future eminent domain actions. Such an award could "defeat" the right of eminent domain in at least two ways. Initially, an award of damages to land owners benefitted by a building restriction may be so prohibitive as to require termination of the contemplated condemnation action. Secondly, although the public entity might be able to pay the damage awards and proceed with the public use of the condemned property, the financial burdens involved may outweigh the expected benefit to the public. Each of these is an equally unacceptable alternative which the majority's decision imposes on those entities possessing powers of eminent domain.[3]

Additionally, damage awards in future eminent domain actions may present complex procedural entanglements. If each parcel in a residential subdivision is mutually benefitted and burdened by a building restriction, then upon violation of the restriction by condemnation proceedings and inconsistent use, the problem is raised as to which persons have compensable property interests requiring joinder in the action. The owner of every benefitted parcel should be joined if, as the majority concludes, each has suffered a taking of "property."[4] Also, since lienholders and mortgagees

---

[3]Since only a small number of parties conceivably have been injured by the violation of the building restriction in this case the increased condemnation costs caused by damage awards may be insubstantial. However, the factual circumstances presented by this action should not blind the majority from recognizing that in similar situations the number of injured parties claiming damage may be so numerous as to make the use of eminent domain prohibitive.

[4]The majority cites Stoebuck, *Condemnation of Rights the Condemnee Holds in Lands of Another* (1970) 56 Iowa L.Rev. 293, 307-308. There the author states that individuals suffering a "technical" injury may be compensated by a settlement aggreement. He also proposes a highly questionable procedure to dispose of the claims of such persons who have a compensable property interest taken: "A major safety valve for the condemnor is that holders of the smaller claims cannot, practically, afford to press their claims very hard. . . . Perhaps the condemnor would even be justified in failing to join those with nominal claims, putting the burden on them to join the action or later to bring an inverse condemnation action. Neither of

maintain a present proprietary interest in the benefitted property, they too may possess a right to have that interest considered and protected.[5] These are substantial procedural hurdles which, because of the majority's refusal to consider, may return to haunt us in the near future.

I would affirm the trial court judgment denying compensation for the violation of the restriction on the basis of the *Friesen* case and *Lombardy v. Peter Kiewit Sons' Co.,* 266 Cal.App.2d 599 [72 Cal.Rptr. 240]. The following commentary places the problem in true perspective: "Decision on the scope of compensation in eminent domain is simply a question of policy. [Citation.] If we are at all correct in concluding that fundamental fairness requires compensation for consequential loss if feasible, the policy decision becomes one simply of the practicalities. The answer lies in the economic information which will be revealed by inquiries beyond the reach of the courts, which are largely confined to information presently available or collected by litigants. Therefore, these questions may be explored more satisfactorily by legislatures." (Spies & McCoid, *Recovery of Consequential Damages in Eminent Domain* (1962) 48 Va.L.Rev. 437, 457-458.)

McComb, J., concurred.

---

these responses would be likely to occur unless property owners' losses were more substantial than expected."

[5] See 17 Cal.Jur.2d, Eminent Domain, section 95; 154 A.L.R. 1110, Rights of Mortgagee in Award in Eminent Domain Proceedings.