No. 17,920.

PHILLIP P. SMITH, ET AL. v.
CLIFTON SANITATION DISTRICT.
(300 P. [2d] 548)

Decided August 6, 1956..

Messrs. ADAMS, HECKMAN, TRAYLOR & ELA, Mr. IVAN P. KLADDER, for plaintiffs in error.

Messrs. GROVES, DUFFORD & TURNER, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

IN the exercise of its admitted power of eminent domain, defendant in error, herein referred to as "District," filed its petition in condemnation against Clyde A. Peterson, the owner of a certain tract of land embracing twenty-one acres, for the purpose of acquiring the same

and to construct thereon a sanitary disposal system. This condemnation petition was filed October 29, 1955, after negotiations between the District and Peterson had failed to bring about an agreement between the parties concerning the value of the land to be taken.

During the time these negotiations were pending the plaintiffs in error, together with some thirty-seven other persons, claiming to own land within an eleven square mile area adjacent to and including the Peterson land, executed a Restrictive Use Agreement which attempted to prohibit the use of their respective properties for certain purposes, including a sanitary disposal system. Some three days prior to the filing of the condemnation proceeding, counsel for the District were advised that additional persons had executed the Restrictive Use Agreement. Following the institution of the condemnation case a Cross-Petition was presented to the trial court on behalf of plaintiffs in error and other persons. The Cross-Petitioners asked to intervene in the case and demanded damages because of the proposed taking of the Peterson land for a disposal system. After hearing, this application to intervene was denied, and from the judgment entered thereon, plaintiffs in error bring the case here on writ of error.

The Restrictive Use Agreement was dated and recorded September 22, 1955. On September 23, 1955, thirty-seven other persons signed the same agreement.

The relevant portions of the Restrictive Use Agreement purports to bind all of the land of any person signing the agreement within nine sections of land in Township 1 S. Range 2 E. Ute Meridian, Mesa County, Colorado. The purpose of the restrictive covenants was stated to be "for the purpose of keeping said tracts desirable, uniform and suitable for agricultural and residential and limited commercial purposes in accordance with the desires of the parties hereto." Said covenants were declared to be covenants running with the land originally to October 1, 1960, and for successive five year periods

thereafter, provided fifty-one per cent of the acreage owners "shall be able to abandon, alter or amend these restrictions at any time after October 1, 1960, by joining in a mutual release, alteration or amendment in writing to be duly recorded." The agreement provided that no sewage lagoons shall be located or maintained which do not first employ a closed primary digestive system between the source of the sewage and the said lagoon; it also prohibited junk yards, tanneries, glue factories, plants for the manufacture of explosives, fertilizers, oil and gas refineries, dance halls, breweries, etc.

We are called upon to determine whether the intervenors by the execution and recording of these restrictive covenants should be made parties respondent in the condemnation case and permitted to recover damages because of the taking of the Peterson land for the uses of the District. It is not disputed that the petitioners seeking to intervene represent owners of land in a number of sections surrounding the land sought to be condemned, some of their holdings being some two or three miles distant from the Peterson tract, and if they be allowed to intervene countless others would be entitled to come in and claim damages.

It requires no imagination to determine why the restrictive covenants were executed and recorded on the eve of the filing of the condemnation case. Apparently the parties to this proceeding are opposed to the plans of the District and this plan was devised to circumvent if possible the plans of the petitioners in the condemnation case.

■ We are of the opinion that such a scheme as the one before us is contrary to sound public policy and invalid as against the constitutional and statutory rights of the condemnor. The Sanitation District is a body politic or corporate, with power to condemn lands for proper purposes and we hold that the claims of the intervenors, based upon the covenant, cannot be enforced as against the District. Here an attempt is made to en-

force, not as between the signatories of the covenants, but as against a stranger thereto, what in effect are contractual rights. What we have here is an attempt where certain landowners by means of a private agreement have sought to append restrictions on an area in excess of several thousand acres of land, and thereby assert a property right in a twenty-one acre tract.

We think it is fundamental that where a company, corporation or agency of the state is vested with the right of eminent domain and has acquired property thru eminent domain proceedings and is using the property for public purposes, no claim for damages arises by virtue of such a covenant as in the instant case, in favor of the owners of other property on account of such use by the condemnor. Were the rule otherwise the right of eminent domain could be defeated if the condemning authority had to respond in damages for each interest in a large subdivision or area subject to deed restrictions or restrictive covenants.

We do not have before us the entire restrictive covenant agreement, but are favored with only excerpts therefrom.

The intervention petition failed to allege that the District would not employ "A closed primary digestive system between the source of the sewage and the said lagoon," as recited in the covenant.

The best that can be said of the restrictive covenant in this case is that it is in the nature of a negative easement or equitable servitude. It is not a positive easement or right in the land itself which would permit of the physical use or occupation of the Peterson land by the other property owners who signed the covenant. A right enforceable in equity as between the parties to the contract, or their successors with notice, was probably created, on the theory that it would be unconscionable to permit one who had contracted to use his property in a particular way to violate his agreement. Parties may not by contract between themselves restrict the

exercise of the power of eminent domain. *Moses v. Hazen,* 63 App. D. C. 104, 69 F. 2d 843; *Friesen v. Glendale,* 209 Cal. 524, 288 Pac. 1080; *Anderson v. Lynch,* 188 Ga. 154, 3 S.E. 2d. 85; *Norfolk & W. Ry. Co. v. Gale,* 119 Ohio St. 110, 162 N.E. 385; *City of Houston v. Wynne,* 115 Tex. 255, 281 S.W. 544; *Doan v. Cleveland Short Line Ry. Co.,* 92 Ohio St. 461, 112 N.E. 505.

█ ▪The following from *U.S. v. Certain Lands in Town of Jamestown,* 112 F. 622, is directly in point: "Each landowner holds his estate subject to the public necessity for the exercise of the right of eminent domain for public purposes. He cannot evade this by any agreement with his neighbor, nor can his neighbor acquire a right from a private individual which imposes a new burden upon the public in the exercise of the right of eminent domain."

A careful consideration of the entire record convinces us that no error appears herein. To hold otherwise would place a premium on property owners of adjacent property to attempt to thwart a public improvement by the execution of restrictive covenants and subject the public agency seeking to acquire lands for proper purposes to the payment of speculative and unwarranted damages.

The judgment is affirmed.