The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
October 4, 2018

## 2018COA148

## No. 17CA1663 Town of Monument v. State of Colorado — Real Property — Restrictive Covenants; Eminent Domain

A division of the court of appeals holds that, under the

Colorado Supreme Court's decision in *Smith v. Clifton Sanitation

District,* 134 Colo. 116, 300 P.2d 548 (1956), a restrictive covenant

banning certain uses of property is not a compensable property

interest in the context of an eminent domain case. *Smith* is not

limited to its facts, but instead announces a broad rule. In so

holding, the division rejects dictum to the contrary in *City of

Steamboat Springs v. Johnson,* 252 P.3d 1142 (Colo. App. 2010).

Court of Appeals No. 17CA1663
El Paso County District Court No. 17CV30105
Honorable Eric Bentley, Judge

Town of Monument, a statutory municipality of the State of Colorado,

Plaintiff-Appellant,

v.

State of Colorado, by and through the State Board of Land Commissioners;
Forest View Company; and Raymond Decker,

Intervenors-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE J. JONES
Ashby and Harris, JJ., concur

Announced October 4, 2018

Murray Dahl Kuechenmeister & Renaud LLP, Malcolm Murray, Joseph Rivera,
Lakewood, Colorado, for Plaintiff-Appellant

Cynthia H. Coffman, Attorney General, Ed Hamrick, Senior Assistant Attorney
General, Eva La, Assistant Attorney General, Denver, Colorado, for Intervenor-
Appellee State of Colorado

Hanes & Bartels LLC, Richard W. Hanes, Brenda L. Bartels, Colorado Springs,
Colorado, for Intervenors-Appellees Forest View Company and Richard Decker

¶ 1    The Town of Monument (the Town) bought a parcel of real property in a residential subdivision, intending to construct a municipal water storage tank on the lot. There was only one problem: a restrictive covenant prohibiting such structures applies to all lots in the subdivision. So the Town filed this case, seeking to use its power of eminent domain to have the court declare its property free of the restrictive covenant. Not so fast, said some of the other owners of lots in the subdivision, who had intervened in the case.[1] They said because the restrictive covenant benefits all property in the subdivision, the Town can't eliminate the restrictive covenant on its lot without paying every property owner in the subdivision an amount compensating each of them for the loss in value to their respective properties. The State Board of Land Commissioners (Land Board), which owns several lots in the subdivision, presented an even greater obstacle to the Town's goal. It asserted that because the restrictive covenant is a compensable interest in the property, and the power of eminent domain can't be used against the State, the Town can't eliminate the restrictive

---

[1] The Town originally named only itself (as the owner of the parcel in question) and the county treasurer as defendants.

1

covenant on its lot. The Town fought back, claiming that the restrictive covenant isn't a compensable interest in property in the context of an eminent domain case.

¶ 2 Everyone recognized that the case came down to deciding whether the Colorado Supreme Court's decision in *Smith v. Clifton Sanitation District*, 134 Colo. 116, 300 P.2d 548 (1956), or the Colorado Court of Appeals' decision in *City of Steamboat Springs v. Johnson*, 252 P.3d 1142 (Colo. App. 2010), controls. In the former, an eminent domain case, the court held that a restrictive covenant wasn't a compensable property interest. *Smith*, 134 Colo. at 119-21, 300 P.2d at 549-50. In the latter, also an eminent domain case, the division said that a restrictive covenant was a compensable property interest. *Johnson*, 252 P.3d at 1146.

¶ 3 The district court agreed with the intervening landowners. It reasoned that *Smith*, which involved property owners who agreed to a restrictive covenant for the clear purpose of preventing a condemnation, must be limited to its particular facts; this case doesn't involve comparable facts; and *Johnson* sets forth the better rule. This ruling rendered the Town's condemnation action untenable for several practical reasons, but also because the power

of eminent domain can't be exercised against the State.  As a result, the parties stipulated to a dismissal of the case with prejudice.  The court granted the stipulation.  The Town timely appealed from the dismissal, raising only the issue whether *Smith* controls.

¶ 4     We hold that the holding and underlying reasoning of *Smith* aren't limited to that case's particular facts.  That is, the court announced a rule of law — that a restrictive covenant isn't a compensable property interest in an eminent domain case — and the rule isn't limited to situations where the affected property owners agree to the restrictive covenant in a clear attempt to thwart acquisition of property by a public entity for public use.  We therefore reverse and remand the case for further proceedings.

## I.     We Have Jurisdiction

¶ 5     Though the Land Board stipulated to the dismissal with prejudice so that the Town could appeal the issue presented, it now argues that because of that dismissal we lack jurisdiction over the appeal.[2]  The Land Board says the order ruling on the *Smith* issue isn't appealable because it didn't resolve the case on the merits and,

---

[2] Forest View Company and Raymond Decker, the other appellees, haven't made any similar argument.

3

relying primarily on *Foothills Meadow v. Myers*, 832 P.2d 1097 (Colo. App. 1992), the stipulation for dismissal with prejudice means no court has jurisdiction over the case. Both arguments fail.

¶ 6      The order disposing of the *Smith* issue may or may not have been a final judgment. But regardless, the dismissal with prejudice clearly constituted a final, appealable judgment. *Id.* at 1098; *Dailey v. Montview Acceptance Co.*, 514 P.2d 76, 78 (Colo. App. 1973) (not published pursuant to C.A.R. 35(f)). And once the court entered it, the legal ruling on which the dismissal was premised became appealable. *See BCW Enters., Ltd. v. Indus. Claim Appeals Office*, 964 P.2d 533, 537 (Colo. App. 1997) ("[A]n interlocutory order becomes reviewable when appealed incident to or in conjunction with an otherwise final order."); *see also McBride v. CITGO Petroleum Co.*, 281 F.3d 1099, 1104 (10th Cir. 2002) (notice of appeal designating the final judgment is sufficient to support review of all earlier orders that merge into the final judgment).[3]

---

[3] Of course, not all interlocutory rulings are appealable after the court enters a final judgment. *See, e.g.*, *Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1250 (Colo. 1996) ("[T]he propriety of a summary judgment denial is not appealable after a trial on the merits.").

¶ 7    Further, the court's order determining that the restrictive covenant is a compensable property interest, in effect, completely resolved the parties' rights.  *See Brody v. Brock*, 897 P.2d 769, 777 (Colo. 1995) (an order on a question of law was a final, appealable order, notwithstanding that the court purported to dismiss the plaintiff's claim without prejudice, because it completely determined the parties' rights with respect to that claim); *In re Custody of Nugent*, 955 P.2d 584, 587 (Colo. App. 1997) (orders entered before court's order of dismissal completely resolved the parties' rights as to the issue raised on appeal).  That's because the Town can't acquire property owned by the State via eminent domain, *Town of Parker v. Colo. Div. of Parks & Outdoor Recreation*, 860 P.2d 584, 586-89 (Colo. App. 1993), and the Land Board owns several lots benefitted by the restrictive covenant.  So there's no way for the Town to eliminate the restrictive covenant on its lot in this proceeding, at least if the district court's ruling stands.[4]

¶ 8    But what about *Foothills Meadow*, on which the Land Board so heavily relies?  The short answer is that the Land Board misreads

---

[4] The Land Board recognized this in urging the district court to dismiss the case.

the case. It doesn't hold that once a district court dismisses a case with prejudice pursuant to the parties' stipulation the case is over for all purposes, and the dismissal, or the underlying ruling prompting it, can't be appealed. Rather, it holds, as does the case it cites, *Columbia Sav. & Loan Ass'n v. Dist. Court*, 186 Colo. 212, 217, 526 P.2d 661, 664 (1974), that once a district court dismisses a case with prejudice, *that court* loses jurisdiction over the case, *Foothills Meadow*, 832 P.2d at 1097-98 (after the district court dismissed case with prejudice, a party to that case couldn't later seek a declaratory judgment in that case against a new party because "neither the action nor the parties remain[ed] within the jurisdiction of the court").[5] So *Foothills Meadow* doesn't apply to the Town's appeal.

¶ 9     In sum, we conclude that we have jurisdiction over the Town's appeal.

## II.     The Rule Announced in *Smith* Controls

¶ 10     The facts in *Smith* are, as appellees point out, somewhat unusual, in at least one sense. A sanitation district sought to

---

[5] There are some exceptions to this rule. For example, the court would have jurisdiction to rule on a timely C.R.C.P. 60(b) motion.

obtain property on which it would build a "sanitary disposal system." 134 Colo. at 118, 300 P.2d at 548. That, of course, wasn't unusual. What was unusual was that after negotiations to buy the property broke down, the owner of the property and owners of many surrounding properties entered into a restrictive covenant barring the use of their properties for certain purposes, including as sanitary disposal systems. Their obvious goal was to try to prevent the sanitation district from obtaining the property for its desired purpose through eminent domain. *Id.* at 117-18, 300 P.2d at 548-49.

¶ 11 Undeterred, the sanitation district filed a condemnation petition anyway, naming only the owner of the subject property as a party. The district court refused to allow the other property owners to intervene, and they appealed. The supreme court phrased the question before it as follows:

> We are called upon to determine whether the intervenors by the execution and recording of these restrictive covenants should be made parties respondent in the condemnation case and permitted to recover damages because of the taking of the [subject property] for the uses of the District.

*Id.* at 119, 300 P.2d at 549.

¶ 12     In holding that the restrictive covenant couldn't be enforced against the district, the court announced the following rule:

> We think it is fundamental that where a company, corporation or agency of the state is vested with the right of eminent domain and has acquired property thr[ough] eminent domain proceedings and is using the property for public purposes, no claim for damages arises by virtue of such a covenant as in the instant case, in favor of the owners of other property on account of such use by the condemner. . . .  Parties may not by contract between themselves restrict the exercise of the power of eminent domain.

*Id.* at 120-21, 300 P.2d at 550.

¶ 13     Taken at face value, this rule would seem to control this case — meaning the restrictive covenant doesn't give the other lot owners a compensable property interest in this eminent domain proceeding. But the district court concluded otherwise, saying that the rule announced in *Smith* is "dicta" that applies "only in the unusual factual context of that case."  In so concluding, the court gave several reasons, some of which appellees adopt on appeal.  Those reasons are: (1) the holding in *Smith* is limited to situations in which owners "scheme" in an "invalid" manner "contrary to sound public policy" to prevent condemnation; (2) the restrictive covenant

8

in this case doesn't actually "restrict" the Town's exercise of its power of eminent domain, the danger against which the *Smith* case warned; (3) *Smith* rested its broadly stated rule, at least partially, on property law concepts that are no longer valid; (4) *Smith*'s rationale appears to conflict with United States Supreme Court decisions holding that contracts are property within the meaning of the Fifth Amendment's Takings Clause; (5) applying *Smith* as broadly as the Town urges would place Colorado in the minority of jurisdictions on this issue; and (6) because of factual differences between this case and *Smith*, *Smith* doesn't control "even if one were to read [it] more broadly than" the district court did. To these reasons the Land Board adds that the Town agreed to the restrictive covenant when it bought its lot.

¶ 14 In the end, almost all these arguments are subsumed by the question whether *Smith*'s pronouncements of the law are confined to situations where the landowners agreed to the restrictive covenant for the purpose of thwarting a possible eminent domain action. We aren't persuaded that they are. Indeed, we're persuaded that *Smith*'s holding broadly applies to any situation in which a restrictive covenant such as the one at issue is interposed as an

obstacle to a condemning authority's attempt to obtain property for public use through eminent domain. In our view, *Smith* holds, in short, that a restrictive covenant of this type isn't a compensable property interest for eminent domain purposes.

¶ 15      We begin by acknowledging that the *Smith* court discussed, and was apparently troubled by, the way the restrictive covenant in that case came about. It did refer to a "scheme" by the property owners; one "contrary to sound public policy and invalid as against the constitutional and statutory rights of the condemner." *Id.* at 119, 300 P.2d at 549. But the "scheme" — or, put another way, the property owners' intent — wasn't the fulcrum of the court's decision. Had it been so, the court wouldn't have needed to articulate the rule set forth above. It could've just said that regardless whether such restrictive covenants are compensable property interests in this context, they aren't when agreed to as part of a scheme to muck up a condemning authority's plans to acquire property through eminent domain. But the court didn't say anything like that. Instead, it articulated a rule in broad terms, without caveat. And it justified the rule with broadly applicable policy reasons; specifically, (1) the difficulty a condemning authority

would confront if it "had to respond in damages for each interest in a large subdivision or area subject to deed restrictions or restrictive covenants," *id.* at 120, 300 P.2d at 550; (2) the inconsistency of the notion that property owners can, in effect, impose burdens on the public's right of eminent domain with the notion, which the court approved of, that "[e]ach landowner holds his estate subject to the public necessity for the exercise of the right of eminent domain for public purposes," *id.* at 121, 300 P.2d at 550 (quoting *United States v. Certain Lands in Town of Jamestown, R.I.*, 112 F. 622, 629 (C.C.D.R.I. 1899)); and (3) the concern that to hold otherwise would "subject the public agency . . . to the payment of speculative and unwarranted damages," *id.* These policy reasons are implicated whenever a restrictive covenant of the type at issue in this case is in play, regardless of the property owners' intent.

¶ 16 To all this, we add the observation that, in announcing the rule, the *Smith* court cited several cases from other jurisdictions as support. *Id.* None of those cases involved a scheme to thwart a public entity's exercise of its eminent domain power; all announced a broad rule. *See* 2 Julias L. Sackman et al., Nichols on Eminent Domain § 5.07[4][b] (3d ed. 2015) (citing all of those cases, and

*Smith*, as taking the minority view that a restrictive covenant isn't a compensable property interest).  And other courts have cited *Smith* itself as adopting a broad, non-fact-specific rule.  *E.g.*, *Direct Mail Servs., Inc v. Best*, 729 F.2d 672, 676 n.2 (10th Cir. 1984); *Leigh v. Village of Las Lunas*, 108 P.3d 525, 530 (N.M. Ct. App. 2004); *Sch. Dist. No. 3 v. Country Club of Charleston*, 127 S.E.2d 625, 626 (S.C. 1962).

¶ 17    The district court and appellees assert that the division said otherwise in *Johnson.*  True.  But it did so in dictum: the parties in that case had stipulated that the restrictive covenant was a compensable property interest, 252 P.3d at 1144, 1146, and so the division's discussion of *Smith* wasn't necessary to its holdings (which concerned the nature and valuation of the interest).  *See Hardesty v. Pino*, 222 P.3d 336, 340 (Colo. App. 2009) (a holding and its necessary rationale aren't dicta); *Coon v. Berger*, 41 Colo. App. 358, 360, 588 P.2d 386, 387 (1978) ("[A]ny expression of opinion on a question not necessary for the decision is merely *obiter dictum.*" (citing *Young v. People*, 54 Colo. 293, 307, 130 P. 1011, 1016 (1913))), *aff'd*, 199 Colo. 133, 606 P.2d 68 (1980); Black's Law Dictionary 1240 (10th ed. 2014) (defining "obiter dictum" as "[a]

12

judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential"). And, the division's analysis of *Smith* was quite brief; the division based its conclusions solely on the way the restrictive covenant in *Smith* had been created. As discussed above, we don't agree that the *Smith* court's pronouncements and underlying rationale reflect any essential dependence on those circumstances. *See Johnson*, 252 P.3d at 1147 (one division of the court of appeals isn't bound by another division's prior ruling). As we read *Smith*, the court was concerned with the negative practical effect restrictive covenants of the type at issue have on public entities' efforts to exercise their constitutional and statutory rights of eminent domain.

¶ 18    Given our conclusion that *Smith* holds that a restrictive covenant of the type at issue isn't a compensable property interest in an eminent domain case, the remainder of our course is clear. We must reverse the district court's judgment and order. *See In re Estate of Ramstetter*, 2016 COA 81, ¶ 40 (Colorado Court of Appeals must follow Colorado Supreme Court precedent). Whether *Smith*'s holding is based on sound policy, consistent with more modern

property law concepts, or reflective of a minority view simply doesn't matter. *See People v. Novotny*, 2014 CO 18, ¶ 26 (only the Colorado Supreme Court can overrule its own precedents on matters of state law).

¶ 19    But to put the matter completely at rest, we briefly address the other rationales proffered by the district court and appellees.

- Contrary to the district court's assertion, the restrictive covenant at issue directly implicates the dangers with which the *Smith* court was concerned. The court wasn't concerned merely with the authority's ability to exercise the power of eminent domain; it was mainly concerned with the practical difficulties created by the need to award damages — largely "speculative" damages — "for each interest in a large subdivision." *Smith*, 134 Colo. at 120-21, 300 P.2d at 550. The subdivision in this case has dozens of lot owners, all of whom can claim the benefit of the restrictive covenant. (And, in any event, as discussed, because the Land Board is a property owner benefitting from the restrictive covenant, the Town's ability to condemn the restrictive covenant

would be foreclosed if the restrictive covenant were a compensable property interest.)

- We don't perceive any direct conflict between *Smith* and the United States Supreme Court cases recognizing that a contract may give rise to a compensable interest. The two cases which the district court cited were decided well before *Smith*. *Lynch v. United States*, 292 U.S. 571 (1934); *Long Island Water-Supply Co. v. City of Brooklyn*, 166 U.S. 685 (1897). Neither addressed the issue addressed in *Smith*, and to our knowledge the Supreme Court hasn't addressed that issue in the interim.

- Assuming the Town was aware of the restrictive covenant when it bought the lot, we don't perceive its buying the lot as an agreement to be bound by the covenant. The Land Board cites no authority for the proposition that a buyer of real property is, merely by virtue of buying the property, forever barred from challenging a restriction on that property's use.

### III. Conclusion

¶ 20 Perhaps the supreme court will one day revisit its holding in *Smith*. But until it does so, and changes its mind, all lower courts are bound to follow that decision. We therefore reverse the judgment and remand the case for additional proceedings consistent with this opinion.

JUDGE ASHBY and JUDGE HARRIS concur.