Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 8, 2020

**2020 CO 52**

**No. 18SC793, *Forest View Co. v. Town of Monument* — Eminent Domain — Property — Condemnation — Restrictive Covenants — Takings.**

The supreme court reviews whether the court of appeals erred in determining that a restrictive covenant was not a compensable property interest for neighboring landowners in an eminent domain proceeding. In so doing, the court concludes that its decision in *Smith v. Clifton Sanitation District*, 300 P.2d 548 (Colo. 1956), was not limited to its particular facts, but instead established a broad rule under which neighboring property owners are not entitled to compensation under the Colorado Constitution when a government entity uses land it acquires in a manner that is violative of a restrictive covenant.

Accordingly, the supreme court affirms the judgment of the court of appeals.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 52

**Supreme Court Case No. 18SC793**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 17CA1663

### Petitioners:

Forest View Company and Raymond Decker,

v.

### Respondent:

Town of Monument, a Statutory Municipality of the State of Colorado.

**Judgment Affirmed**
*en banc*
June 8, 2020

**Attorneys for Petitioners:**
Hanes & Bartels LLC
Richard W. Hanes
Brenda L. Bartels
  *Colorado Springs, Colorado*

**Attorneys for Respondent:**
Murray Dahl Beery & Renaud LLP
Joseph Rivera
  *Lakewood, Colorado*

**Attorneys for Amicus Curiae Colorado Municipal League:**
Laurel A. Witt
David W. Broadwell
  *Denver, Colorado*

**JUSTICE HART** delivered the Opinion of the Court.
**JUSTICE SAMOUR** concurs in the judgment only.
**JUSTICE GABRIEL** dissents.

¶1    The Town of Monument (the "Town") purchased a piece of property on which it planned to build a water tower. Neighboring property owners objected, arguing that the property was subject to a restrictive covenant limiting construction to single-family residences. According to the property owners, if the Town were to violate that covenant by building a water tower, the Town would be taking the restrictive covenant from each of the covenant-subject properties, and it would therefore have to compensate the property owners for the diminution in value caused by that taking.

¶2    It is well settled that property owners adjacent to a government project that diminishes the value of their property are not entitled to compensation from the government for that diminution. But does the existence of a restrictive covenant change the analysis? We answered this question over half a century ago in the negative, holding in *Smith v. Clifton Sanitation District*, 300 P.2d 548 (Colo. 1956), that when state or local government acquires property subject to a restrictive covenant and uses it for purposes inconsistent with that covenant, "no claim for damages arises by virtue of such a covenant as in the instant case, in favor of the owners of other property" subject to the covenant. *Id*. at 550.

¶3    Petitioners here ask us to confine *Smith* to its facts or to overrule it entirely. We decline to do either. Instead, we reaffirm that where a government entity has obtained property for public purposes, the government may use that land for a

3

purpose inconsistent with a restrictive covenant without compensating all of the other landowners who are subject to that restrictive covenant.

## I. Facts and Procedural History

¶4 In September 2016, the Town of Monument purchased a parcel of real property ("Lot 6") from private landowners located in Forest View Estates IV, a 39-lot subdivision in El Paso County whose lots are subject to a restrictive covenant.

¶5 The Town intended to build a million-gallon municipal water storage tank on the property, but due to the residential-use limitation in place, the Town felt that it needed to extinguish the restrictive covenant encumbering Lot 6 to proceed with construction. Specifically, the portion of the covenant at issue here stated that "[a]ll lots shall be known and described as residential lots and shall be used only for private, custom, site-built homes," and "[n]o structure shall be erected . . . on any lot other than one single-family dwelling." Believing that it could not construct the water tower without either breaching the covenant or extinguishing the encumbrance, the Town sought to exercise its eminent domain authority.

¶6 In January 2017, the Town filed a petition in condemnation in the El Paso County District Court pursuant to sections 31-15-707(1)(e), C.R.S. (2019), and 38-1-105(5), C.R.S. (2019), which together permit a government entity that has

4

purchased property, instead of acquiring it through its power of eminent domain, to perfect title to that property.

¶7 In February 2017, Forest View Company, Raymond Decker, and John Does 1–40 (the latter all property owners in the same subdivision as Lot 6) (collectively, the "intervenors") intervened in the action, arguing, among other things, that they were owed reasonable compensation for the decrease in value to their lots and homes brought about by lifting the restrictive covenant from Lot 6. The intervenors argued that the covenant encumbering each lot was an independent property interest held by the owner of the lot and that the Town was trying to take that property interest through eminent domain without providing just compensation as required by article II, section 15 of the Colorado Constitution.

¶8 Both the Town and the intervenors agreed that the question of whether the other property owners in the subdivision had to be compensated for any drop in the value of their properties turned on the scope of our holding in *Smith*. The parties stipulated that if *Smith* controlled, then the intervenors had no standing and the condemnation could proceed unimpeded.

¶9 In July 2017, the district court issued an order finding that our holding in *Smith*, particularly the language which stated that "[p]arties may not by contract between themselves restrict the exercise of the power of eminent domain," 300 P.2d at 550, was dicta applicable only to the unique factual context of the case.

5

The court noted that the specific restrictive covenants at issue in *Smith* were recorded "on the eve of filing" the condemnation action in an obvious effort to thwart the government's exercise of eminent domain. Accordingly, the court found that *Smith* was distinguishable and that the Forest Valley Estates restrictive covenants created a compensable property interest for each property owner whose land was subject to those covenants.

¶10 The Town appealed, raising a single issue—whether *Smith* in fact controlled the outcome—and a division of the court of appeals reversed. *Town of Monument v. Colorado*, 2018 COA 148, ¶¶ 3–4, __ P.3d __. The division reasoned that, although the facts in *Smith* were unique, the decision's holding "broadly applies to any situation in which a restrictive covenant such as the one at issue is interposed as an obstacle to a condemning authority's attempt to obtain property for public use through eminent domain." *Id*. at ¶ 14.

¶11 The intervenors petitioned for certiorari review and we granted the petition.[1]

---

[1] Specifically, we granted certiorari to review the following issue:

1. Whether the court of appeals was in error interpreting the Colorado Supreme Court's decision in *Smith v. Clifton Sanitation District*, 300 P.2d 548 (1956), that a restrictive covenant proscribing certain uses of property is not a compensable property interest in the context of an eminent domain case, and in the process created

## II. Analysis

¶12　We begin by discussing the appropriate standard of review and applicable principles of statutory construction. We then turn to a discussion of our decision in *Smith* to determine whether the rule it espouses is confined to the particular facts of that case. We conclude that it is not. We next explain why the rule in *Smith* is consistent with our interpretation of article II, section 15 of the Colorado Constitution more generally. Finally, we consider the policy implications associated with extending takings jurisprudence to the claims asserted here. Because we conclude that there are no sound reasons to depart from our holding in *Smith*, we affirm the judgment of the court of appeals.

### A. Standard of Review and Stare Decisis

¶13　While we defer to the trial court's findings of fact in condemnation proceedings, we review a trial court's legal conclusions de novo. *Glenelk Ass'n v. Lewis*, 260 P.3d 1117, 1120 (Colo. 2011). Likewise, we review questions of constitutional and statutory interpretation de novo. *Ziegler v. Park Cty. Bd. of Cty. Comm'rs*, 2020 CO 13, ¶ 11, 457 P.3d 584, 588.

---

a significant exception to the takings clause of the Colorado Constitution, Article II, section 15.

¶14    With regard to case law, the doctrine of stare decisis requires that we adhere to precedent in order to promote "uniformity, certainty, and stability of the law." *People v. Porter*, 2015 CO 34, ¶ 23, 348 P.3d 922, 927 (quoting *People v. LaRosa*, 2013 CO 2, ¶ 28, 293 P.3d 567, 574).  We adhere to the doctrine "[a]bsent 'sound reason for rejecting it.'"  *Id*. (quoting *People v. Blehm*, 983 P.2d 779, 788 (Colo. 1999); *see also Creacy v. Indus. Comm'n*, 366 P.2d 384, 386 (Colo. 1961) ("Under the doctrine of stare decisis courts are very reluctant to undo settled law.").

## B. *Smith v. Clifton Sanitation District*

¶15    In *Smith*, the Clifton Sanitation District (the "District") initially sought to purchase a 21-acre tract of land from its owner, Clyde Peterson, in order to construct a sanitation disposal system for municipal use on that land.  300 P.2d at 548.  While the purchase negotiations were ongoing, a group of landowners, including Peterson, executed a restrictive covenant that prohibited use of their land for certain purposes, including the sanitation district's intended use.  *Id*. at 549.  Peterson ultimately refused to sell the property to the District, and the District filed a condemnation proceeding.  *Id*. at 548.  The landowners who owned property subject to the restrictive covenant sought to intervene in the condemnation proceeding.  *Id*. at 549.

¶16    This court noted that "[i]t requires no imagination to determine why the restrictive covenants were executed and recorded on the eve of the filing of the

8

condemnation case." *Id.* We further opined that "such a scheme" as this apparent effort to interfere with the District's plans was "contrary to sound public policy and invalid as against the constitutional and statutory rights of the condemner." *Id.*

¶17 In reaching this conclusion, we stated that:

> We think it is fundamental that where a company, corporation or agency of the state is vested with the right of eminent domain and has acquired property thru [sic] eminent domain proceedings and is using the property for public purposes, no claim for damages arises by virtue of such a covenant as in the instant case, in favor of the owners of other property on account of such use by the condemner. Were the rule otherwise the right of eminent domain could be defeated if the condemning authority had to respond in damages for each interest in a large subdivision or area subject to deed restrictions or restrictive covenants.

*Id.* at 550. We further concluded that the restrictive covenant in that case was more akin to a negative easement or equitable servitude, "not a positive easement or right in the land itself which would permit of the physical use or occupation of the Peterson land by the other property owners who signed the covenant." *Id.* And while we determined that a right enforceable in equity between the parties to the contract likely existed as a result of the restrictive covenant, parties could not "by contract between themselves restrict the exercise of the power of eminent domain." *Id.*

¶18 As the intervenors rightly point out, our decision in *Smith* is reasonably susceptible of two readings: either as stating a general rule that restrictive

9

covenants are not compensable property interests for purposes of eminent domain, or simply disapproving of the particular circumstances of the restrictive covenant at issue in that case. They cite the language in *Smith* referring to a "scheme . . . contrary to sound public policy and invalid as against the constitutional and statutory rights of the condemner" to argue that our ruling turned on the particular facts of that case. *Id.* at 549; *see also City of Steamboat Springs v. Johnson*, 252 P.3d 1142, 1146 (Colo. App. 2010) (reading *Smith* as limited to its facts and concluding that a restrictive covenant was a compensable property interest). But as the court of appeals here concluded, the "'scheme'—or, put another way, the property owners' intent—wasn't the fulcrum of the court's decision. Had it been so, the court wouldn't have needed to articulate the rule." *Town of Monument*, ¶ 15.

¶19    We read the rule articulated in *Smith*, which states that "no claim for damages arises by virtue of such a covenant . . . in favor of the owners of other property on account of such use by the condemner," as applicable beyond the facts of that case. 300 P.2d at 550. The question we must answer, then, is whether sound reasons exist for departing from this settled precedent. We conclude that they do not.

## C. Claims Cognizable Under Article II, Section 15 of the Colorado Constitution

¶20 Article II, section 15 provides that "[p]rivate property shall not be taken or damaged, for public or private use, without just compensation." Colo. Const. art. II, § 15. "A taking occurs when a[] [government] entity clothed with the power of eminent domain substantially deprives a property owner of the use and enjoyment of that property." *City of Northglenn v. Grynberg*, 846 P.2d 175, 178 (Colo. 1993). For a landowner to be entitled to compensation under our constitution, "there must be either a taking or a damaging of private property without just compensation." *Id.* at 179. We have previously explained that article II, section 15 of the Colorado Constitution encompasses three types of claims: (1) a taking that involves the government's physical occupation of land; (2) a regulatory taking, in which extensive regulatory interference deprives a property owner of all or almost all use of his land; and (3) a damaging, in which governmental activity has damaged an adjacent landowner's land. *Animas Valley Sand & Gravel, Inc. v. Bd. of Cty. Comm'rs*, 38 P.3d 59, 63 (Colo. 2001). The intervenors do not make any of these claims.

¶21 The intervenors have not asserted that the Town is physically occupying their land. Their claims, rather, might be understood as asserting that the violation of the restrictive covenant on Lot 6 is effectively a physical occupation of the restrictive covenants held by the other landowners who are subject to the

11

covenant. But a restrictive covenant is intangible and cannot be physically occupied. This highlights an essential difference between a positive easement—a right to occupy another person's land for some purpose—and a negative easement—a right to prohibit certain conduct on another person's land—in the takings context. Jon W. Bruce & James W. Ely, Jr., *The Law of Easements & Licenses in Land* § 2:10 (2019) (explaining the distinction between affirmative and negative easements). If the Town, when it acquired Lot 6, intended to extinguish a right of way over Lot 6, then the Town would be physically occupying the land subject to that right of way. Here, however, in violating the restrictive covenant, the Town is not physically occupying any property other than Lot 6.

¶22 The intervenors' claims are logically more analogous to regulatory taking claims. A regulatory taking occurs when a government entity does not physically occupy the land, but government action places an impermissible burden on certain landowners, effectively "forcing some people alone to bear public burdens that, in fairness and justice, should be borne by the public as a whole." *Bd. of Cty. Comm'rs v. Flickinger*, 687 P.2d 975, 983 (Colo. 1984). However, a regulatory taking can only be established if the regulation imposes a "very high" level of interference with the property owner's use of the land—that is, "a mere decrease in property value is not enough." *Animas Valley Sand & Gravel*, 38 P.3d at 65; *see also Van Sickle v. Boyes*, 797 P.2d 1267, 1271 (Colo. 1990) (noting that landowners do not

12

have a constitutional right to the most valuable use of their property); *Sellon v. City of Manitou Springs*, 745 P.2d 229, 234 (Colo. 1987) (noting the same). Therefore, without evidence of more than diminished property value, regulatory takings law cannot save the intervenors' claims.

¶23 Finally, the intervenors have not claimed that their land was "damaged" in violation of article II, section 15. In any event, "[t]he 'damage' clause only applies to situations in which the damage is caused by government activity in areas adjacent to the landowner's land." *Animas Valley Sand & Gravel*, 38 P.3d at 63; *see also Pub. Serv. Co. of Colo. v. Van Wyk*, 27 P.3d 377, 388 (Colo. 2001) ("The word 'damaged' is in the Colorado Constitution in order to grant relief to those property owners who have been substantially damaged by public improvements made upon land abutting their lands, but where no physical taking by the government has occurred."); *Troiano v. Colo. Dep't of Highways*, 463 P.2d 448, 449–50 (Colo. 1969) (applying "the rule long established in Colorado" that there may be recovery "[w]hen damages are occasioned an abutting owner by an improvement in the street in front of his property" (quoting *City of Pueblo v. Strait*, 36 P. 789, 792 (Colo.

13

1894))). Thus, the restrictive covenant holders whose land is not adjacent to Lot 6 could not bring a claim for "damage" to their land.[2]

¶24 The rule we announced in *Smith* is thus consistent with our takings jurisprudence more generally. The intervenors correctly note that a majority (albeit a narrow one) of jurisdictions that have considered this question have reached the opposite conclusion to the one we reached in *Smith*. *Compare Anderson v. Lynch*, 3 S.E.2d 85, 87 (Ga. 1939) (holding that owners of adjacent lots did not have a compensable ownership interest in a residential-use restrictive covenant), *and Doan v. Cleveland Short Line Ry. Co.*, 112 N.E. 505, 506–07 (Ohio 1915) (holding that building restrictions in lot deeds do not apply to any agency vested with the right of eminent domain), *with S. Cal. Edison Co. v. Bourgerie*, 507 P.2d 964, 965 (Cal. 1973) (holding that property owners are entitled to be compensated for the violation of building restrictions in eminent domain proceedings), *Horst v. Hous. Auth.*, 166 N.W.2d 119, 121 (Neb. 1969) (holding that, where taking of land by eminent domain permits use violative of restrictions imposed by lawful covenants, there is a taking from property owners for whose benefit the

---

[2] Because no damage claim was asserted here, we do not consider or express an opinion as to whether the owners of the property immediately adjacent to Lot 6 would have such a claim.

restrictions were imposed), *and Leigh v. Vill. of Los Lunas*, 108 P.3d 525, 527 (N.M. Ct. App. 2004) (holding that easements in the form of restrictive covenants constitute valuable property rights requiring compensation). *See also* Restatement (Third) of Property: Servitudes § 7.8 reporter's note (Am. Law Inst. 2000) (describing the majority and minority positions); R.E. Barber, Annotation, *Eminent Domain: Restrictive Covenant or Right to Enforcement Thereof as Compensable Property Right*, 4 A.L.R. 3d 1137 (1965) (describing the same). They urge us to join the majority view and conclude that, although it is a different species of claim than any Colorado court currently recognizes, a claim for compensation of the sort asserted here is cognizable under article II, section 15.

### D. Strong Policy Concerns Counsel Against Extending Colorado Takings Jurisprudence to Recognize the Claims Asserted Here

¶25 We are sympathetic to the frustration of the intervenors, who will almost certainly see a drop in the value of their properties as a result of the Town's decision to build a water tower on Lot 6. But, as we have previously explained, "[t]akings jurisprudence balances the competing goals of compensating landowners on whom a significant burden of regulation falls and avoiding prohibitory costs to needed government regulation." *Animas Valley Sand & Gravel*, 38 P.3d at 63. When we consider the balance of the burdens that would be faced by a government agency seeking to provide public services against the harm to the

15

property owners if we were to adopt the rule proposed by the intervenors, the balance ultimately weighs against the intervening property owners.

¶26 First, the property owners have not actually had their restrictive covenants taken; they can still enforce those covenants against all other private owners. Second, the harm they have suffered is a diminution in the value of their property. If that is not sufficient to require compensation in the context of a regulatory taking, it is unclear why it would be sufficient in this context.

¶27 Finally, the potential burden on municipalities like the Town were we to reverse *Smith* would be enormous. As we explained in *Smith*, requiring compensation for property owners other than those whose land is being condemned "would place a premium on property owners of adjacent property to attempt to thwart a public improvement by the execution of restrictive covenants and subject the public agency seeking to acquire lands for proper purposes to the payment of speculative and unwarranted damages." 300 P.2d at 550. And, putting aside questions of covenant holders' intentions, the burden on municipalities and other government entities if every holder of a covenant had to be included in a condemnation action involving development that does not conform to a restrictive covenant would be immense.

¶28    Title 38 places a broad range of obligations on a government entity seeking to exercise its eminent domain authority. In order for a petition in condemnation to be filed, the condemning authority must:

- Provide adequate notice "to anyone having an interest of record in the property involved," and "[i]f the property has an estimated value of five thousand dollars or more, such notice shall advise that the condemning authority shall pay the reasonable costs of an appraisal." § 38-1-121(1), C.R.S. (2019).

- Serve a summons and copies of the pleadings to all parties. § 38-1-103(1), C.R.S. (2019); *see also* C.R.C.P. 4(c) (outlining the contents of a summons).

- "[N]egotiate in good faith for the acquisition of any property interest sought prior to instituting eminent domain proceedings." § 38-1-121(3).

- Furnish all interested property owners of record with a written final offer if negotiations fail to reach agreement. § 38-1-121(6).

Once the valuation hearing begins, in cases where the fact finder determines the amount of just compensation exceeds 130% of the condemning authority's final written offer, interested landowners are also entitled to reasonable attorney's fees. § 38-1-122(1.5), C.R.S. (2019). While in some instances, the number of restrictive covenant holders with whom the government would have to go through this process might be relatively small, in others it might be hundreds or even thousands. As the Supreme Court of Georgia explained in the face of a similar suit:

> Appellees' contention, if carried to its extreme, is that, if there was an addition to the city in which there were 10,000 lots, the city would be required to serve the owner or owners of each lot in a suit to condemn

any one of such lots for public purposes. Such contention, if established as the law governing such matters, would be practically to prohibit the city from condemning property so situated for public use; it would at least greatly restrict the rights of the city to condemn property for public purposes. It is apparent that, if it could not do so in cases where the owners of lots are 10,000 or more in number, it could not do so when they are 1,000 or 1,500 in number.

*Anderson*, 3 S.E.2d at 88.

¶29 *Smith* established a broad rule that neighboring property owners are not entitled to compensation under the Colorado Constitution when the government uses land it acquires in a manner that violates a restrictive covenant. That rule is consistent with our takings jurisprudence more generally. Moreover, policy concerns about the burdens that a different rule would impose on necessary public improvements militate against reversing course now. We will therefore not depart from the doctrine of stare decisis. Instead, we reaffirm our decision in *Smith*.

### III. Conclusion

¶30 For the reasons set forth above, we conclude that *Smith* is not restricted to its particular facts and that a restrictive covenant of the type at issue in this case is not a compensable property interest in an eminent domain proceeding.

¶31 Accordingly, we affirm the judgment of the court of appeals.

**JUSTICE SAMOUR** concurs in the judgment only.
**JUSTICE GABRIEL** dissents.

18

JUSTICE SAMOUR, concurring in the judgment only.

¶32     I generally agree with Justice Gabriel's well-reasoned dissent.  In particular, I believe that his analytical framework is spot on.  The only reason I do not join him is because I do not believe the intervenors can prevail here.

¶33     The majority states that there are three types of claims that are available under article II, section 15 of the Colorado Constitution: (1) "a taking," which involves "the government's physical occupation of land"; (2) "a regulatory taking," which occurs when there is extensive regulatory interference that deprives a property owner of all or almost all use of his land; and (3) "a damaging," which entails "governmental activity [that] has damaged an adjacent landowner's land."  Maj. op. ¶ 20.  Using Justice Gabriel's reasoning, I would adopt the clear majority rule and expand the third category.[1]  More specifically, I would conclude that a damages claim is not limited to damages sustained by an *adjacent* landowner's land.  *See, e.g., Leigh v. Vill. of Los Lunas*, 108 P.3d 525, 527 (N.M. Ct. App. 2004) (holding that an easement in the form of a restrictive

---

[1] I agree with the majority that the other two types of claims are not feasible in this case. Maj. op. ¶¶ 21–22.  First, the Town is not physically occupying any property other than Lot 6.  *Id.* at ¶ 21.  Second, a regulatory taking cannot be established where, as here, there is no evidence of more than diminished property value.  *Id.* at ¶ 22.

1

covenant constitutes a valuable property right and, thus, a violation of such a covenant requires compensation).  Therefore, I would hold that damages claims by all the intervenors (not just the ones who own property adjacent to Lot 6) are viable in the situation we confront in this case.[2]  However, because the intervenors did not raise any damages claims, the Town of Monument would still prevail.

¶34     Accordingly, though I generally agree with Justice Gabriel's dissent, I concur in the judgment only instead.

---

[2] To my mind, it makes little sense to limit damages claims to adjacent landowners where, as here, the damage is caused by the government's violation of a restrictive covenant and such a violation affects adjacent landowners and other landowners equally.

JUSTICE GABRIEL, dissenting.

¶35 We granted certiorari to decide whether the division below erred in interpreting our decision in *Smith v. Clifton Sanitation District*, 300 P.2d 548 (Colo. 1956), as ruling that restrictive covenants proscribing certain uses of property do not constitute compensable property interests in the context of eminent domain proceedings. Unlike the majority, I do not read *Smith* as broadly concluding that, as a matter of law, restrictive covenants are not compensable property interests. To the contrary, I believe that *Smith* was limited to its facts, and I would follow what appears to be the majority rule in the United States, which recognizes that restrictive covenants generally constitute compensable property interests for purposes of eminent domain proceedings. Accordingly, I would reverse the judgment below.

¶36 I therefore respectfully dissent.

## I. Analysis

¶37 I agree with the majority's recitation of the factual and procedural background of this case, and I need not repeat it here. I thus begin by discussing *Smith*, and I explain why I believe that that case was limited to its facts. I then point out why, in my view, we should follow the majority rule and conclude that a restrictive covenant is a compensable property interest for purposes of eminent domain proceedings.

1

## A. *Smith*

¶38 In *Smith*, a sanitation district filed a condemnation petition against a landowner seeking to acquire the landowner's property in order to construct a sanitary disposal system on it. *Id.* at 548. The district filed its petition after negotiations between it and the landowner had failed to produce an agreement as to the value of the land to be taken. *Id.*

¶39 While these negotiations were ongoing, a number of landowners claiming to own land within an eleven-square-mile area adjacent to and including the land that was the subject of the condemnation petition signed restrictive covenants that attempted to prohibit the use of their respective properties for certain purposes, including a sanitary disposal system. *Id.* at 549. These neighboring landowners then sought leave to intervene in the condemnation case for the purpose of filing a cross-petition seeking damages. *Id.* The district court denied the neighboring landowners' motion for leave to intervene, and they appealed to this court. *Id.*

¶40 We affirmed the district court's order. *Id.* at 550. In reaching this conclusion, we began by noting, "It requires no imagination to determine why the restrictive covenants were executed and recorded on the eve of the filing of the condemnation case." *Id.* at 549. The obvious purpose was to circumvent the district's plan to construct a sanitary disposal system. *Id.* We then stated:

> We are of the opinion that *such a scheme as to the one before us* is contrary
> to sound public policy and invalid as against the constitutional and

2

statutory rights of the condemner. The Sanitation District is a body politic or corporate, with power to condemn lands for proper purposes and we hold that the claims of the intervenors, based upon the covenant, cannot be enforced as against the District. . . .

We think it is fundamental that where a company, corporation or agency of the state is vested with the right of eminent domain and has acquired property thru eminent domain proceedings and is using the property for public purposes, no claim for damages arises by virtue of *such a covenant as in the instant case*, in favor of the owners of other property on account of such use by the condemner. Were the rule otherwise the right of eminent domain could be defeated if the condemning authority had to respond in damages for each interest in a large subdivision or area subject to deed restrictions or restrictive covenants.

*Id.* at 549–50 (emphases added).

¶41 We thus observed that a party cannot evade the power of eminent domain by way of agreements such as the ones that the neighboring landowners had signed in the case there before us. *Id.* at 550. To conclude otherwise, we said, "would place a premium on property owners of adjacent property *to attempt to thwart a public improvement* by the execution of restrictive covenants and subject the public agency seeking to acquire lands for proper purposes to the payment of speculative and unwarranted damages." *Id.* (emphasis added).

¶42 Unlike the majority and the division below, I do not read the above-quoted language as establishing a broad rule that, as a matter of law, restrictive covenants are not compensable property interests for purposes of eminent domain proceedings. To the contrary, as the language that I have emphasized above

3

makes clear, our discussion in *Smith* was limited to the neighboring landowners' "scheme" and transparent attempt to "evade" and "thwart" (by way of hastily executed restrictive covenants) the lawful right of the district to exercise its power of eminent domain. We have no such "scheme" or attempt at evasion here. Indeed, the restrictive covenant at issue was adopted before any effort by the Town to condemn the property at issue. And the Town was well aware that the restrictive covenant posed an impediment to its plan to construct a water storage tank. That is why it instituted the present eminent domain proceeding.

¶43 Nor do I agree with the Town's assertion that restrictive covenants are void as against public policy. Given the vast array of restrictive covenants that exist in neighborhood and homeowners' associations throughout this state, adopting so unlimited a rule (which, it appears, would be unprecedented) would throw the property rights of a substantial number of people and entities into chaos. I perceive no basis for doing so, and the Town cites no authority that would support such a result.

### B. Restrictive Covenants Are Compensable Property Interests

¶44 The question thus becomes what rule should be applied in Colorado.

¶45 To the extent that we have not done so, I would adopt what appears to be the majority rule in the United States, namely, that a restrictive covenant creates a property interest subject to condemnation and just compensation. *See, e.g.,*

4

*Creegan v. State*, 391 P.3d 36, 45 (Kan. 2017) (describing this rule as "what appears to be the clear majority view from our sister jurisdictions"); *Leigh v. Vill. of Los Lunas*, 108 P.3d 525, 529 (N.M. Ct. App. 2004) ("[J]urisdictions . . . that consider restrictive covenants to be equitable easements and compensable property interests reflect the 'majority view'; jurisdictions that insist the covenants do not convey property rights, thus refusing compensation, reflect the 'minority view.'") (quoting 2 Julius L. Sackman, *Nichols on Eminent Domain* § 5.07[4][a], [b], at 5-378-83 (3d ed. 2004)); *see also* Restatement (Third) of Property (Servitudes) § 7.8 cmt. a (2000) ("Restatement (Third)") ("Servitude benefits like other interests in property may be condemned under the power of eminent domain and taken by inverse condemnation.").

¶46     I would adopt this rule for several reasons.

¶47     First, it is consistent with the concept of what a restrictive covenant is. A restrictive covenant is a form of equitable servitude or equitable easement. *See Allen v. Nickerson*, 155 P.3d 595, 599–600 (Colo. App. 2006) (noting that a restrictive covenant is a form of servitude); Restatement (Third), at § 1.1(1)–(2) (noting that a servitude is a legal device that creates rights or obligations that run with land or an interest in land and includes easements, profits, and covenants); *Covenant*, Black's Law Dictionary (11th ed. 2019) (noting that a restrictive covenant is also termed an "equitable easement" or "equitable servitude"); *see also* 9 Richard R.

5

Powell, *Powell on Real Property* ¶ 60.01[6] (2005) (noting that the Restatement (Third) abolished the distinction between easements and covenants). As a result, by definition, a restrictive covenant is an interest in property. *See Wal-Mart Stores, Inc. v. United Food & Commercial Workers Int'l Union*, 2016 COA 72, ¶ 25, 382 P.3d 1249, 1257 (noting that an easement is an interest in land); *Leigh*, 108 P.3d at 529 (concluding that because restrictive covenants are equitable easements under New Mexico law, such covenants, like equitable easements, also constitute property rights subject to condemnation and just compensation).

¶48 Second, concluding that a restrictive covenant constitutes a compensable property interest fully comports with the takings clause of the Colorado Constitution, article II, section 15. That clause provides, "Private property shall not be taken or damaged, for public or private use, without just compensation." *Id.* This clause is broad and subsumes both takings of property and damage to property. In my view, at a minimum, a condemning authority's action to eliminate the protections afforded to a landowner by a restrictive covenant for which the landowner may have paid fair consideration damages that landowner's interest in his or her property rights.

¶49 Third, although I acknowledge the Town's concern that if a restrictive covenant is a compensable property interest, then condemnation proceedings could become more difficult and, perhaps, more expensive, I do not agree that

6

such a burden would be unreasonable or insurmountable. As noted above, a majority of courts in the United States has concluded that a restrictive covenant is a property interest subject to condemnation and just compensation, and I have seen nothing to indicate that the exercise of eminent domain in those jurisdictions has become inappropriately complex or expensive.

¶50 Moreover, as the Nevada Supreme Court stated in rejecting a similar policy argument:

> We do not agree that because a number of persons may be affected by the proceedings it is best to hold the appellants have no right that the law should protect against the sovereign and deny them the right to offer proof of damage. Procedural considerations should not determine the substantive question of whether there is a compensable property interest.

*Meredith v. Washoe Cty. Sch. Dist.*, 435 P.2d 750, 753 (Nev. 1968).

¶51 And, in my view, courts can ameliorate the perceived impact on condemnors by placing the burden of proving damages on the landowners who are resisting the taking, as the New Mexico courts have done. *See Leigh*, 108 P.3d at 530–31.

¶52 Finally, the result that I would reach here is consistent with the Town's own conduct in this case. The Town brought this action seeking to use the power of eminent domain to have the district court declare its property free of the restrictive covenant. Having availed itself of the right of eminent domain to eliminate the

restrictive covenant at issue, the Town should not now be heard to argue that restrictive covenants are not, in fact, compensable property interests.

¶53     Accordingly, I would conclude that a restrictive covenant is a property interest subject to condemnation and just compensation.

## II. Conclusion

¶54     For these reasons, I believe that the division below erred in construing *Smith* as establishing a rule that, as a matter of law, restrictive covenants are not compensable property interests for purposes of eminent domain proceedings.  In my view, *Smith* was limited to its facts, and I would follow the majority rule and conclude that the restrictive covenant at issue was, in fact, a compensable property interest for purposes of the present eminent domain proceeding.  I would therefore reverse the judgment of the division below.

¶55     Accordingly, I respectfully dissent.